## KOHM v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Appellate Division, First Department.  May 5, 1905.)

1. CARRIERS—DUTY TO PASSENGERS—SUPERVISION OF MOVEMENTS.

A common carrier engaged in a great city in the transportation of a large number of passengers between stations, from which it controls their admission to its trains, is bound to exercise care to so direct the movements and disposition of those whom it undertakes to transport as to preserve their safety.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 1087.]

2. SAME—INSUFFICIENT ACCOMMODATIONS—CROWDED PLATFORMS—NEGLIGENCE —QUESTIONS FOR JURY.

Where a carrier of passengers in a city fails to provide either seats or standing room inside its cars, so that the passengers must stand on the platform in order to ride at all, and they are permitted to so ride, whether the carrier is negligent in allowing the platform to become so crowded that a passenger is liable to be pushed off is a question for the jury.

3. SAME—PROXIMATE CAUSE.

A carrier of passengers in a city is not liable for the death of a passenger who falls from a crowded platform, in the absence of evidence that the passenger's fall was caused by the crowded condition of the platform, and where the evidence rather shows that the passenger slipped and fell because of snow brought upon the platform by other passengers, and there is no evidence of any other negligence on the part of the carrier than the overcrowding of the platform.

Hatch, J., dissenting.

Appeal from Trial Term, New York County.

Action by Emilie Kohm, as administratrix of Adolph Kohm, deceased, against the Interborough Rapid Transit Company.   From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.   Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

John F. McIntyre, for appellant.
Charles Steckler, for respondent.

O'BRIEN, J. This action is brought to recover damages sustained by the plaintiff through the death of her husband, which it is alleged was caused by the negligence of the defendant while he was a passenger upon one of its cars. On the day of the accident plaintiff's intestate boarded a north-bound train upon defendant's elevated road, and while standing upon a platform of one of the cars he either fell or was pushed between that car and the following one in such a manner that his leg was crushed, and about a month thereafter he died as the result of the injury. The plaintiff, as appears from the complaint, seeks to predicate defendant's liability upon its negligence in permitting the train to be overcrowded, thus compelling the deceased to occupy a dangerous place, and, while he was thus exposed to danger, in negligently starting its train with a sudden and violent movement, so that the passengers were jostled and thrown against each other, and the intestate thereby caused to fall between the two cars.

The accident happened shortly after 6 o'clock in the afternoon, and the evidence showed that the defendant's north-bound trains, including the one upon which the intestate was riding, were crowded at that time. A common carrier engaged, as this one is, in a great city, in the transportation of a large number of passengers between stations from which it can control their admission to its trains, is bound to exercise care to so direct the movements and disposition of those whom it undertakes to transport as to preserve their safety. Cattano v. Man. R. Co., 173 N. Y. 565, 66 N. E. 563; Lehr v. S. & H. P. R. Co., 118 N. Y. 556, 23 N. E. 889; Graham v. Man. R. Co., 149 N. Y. 336, 43 N. E. 917; Viemeister v. B. H. R. Co., 91 App. Div. 510, 87 N. Y. Supp. 862; Dawson v. N. Y. & B. B., 31 App. Div. 537, 52 N. Y. Supp. 133. In the Cattano Case, supra, the Court of Appeals said, "It was the duty of the defendant, when it allowed passengers to ride on the platform, to use a high degree of care to protect them from injury." When a carrier of passengers fails to provide either seats or standing room inside its cars, so that a passenger must stand on the platform in order to ride at all, and the company permits him to ride there, it cannot allow the platform to become so crowded that he is liable to be pushed off, without presenting a question of fact for the jury as to its negligence in the premises.

Not only did the testimony show that upon this train the defendant undertook to carry more passengers than could either sit or stand inside the cars, but it showed further that the rear platform of the particular car upon which plaintiff's intestate was riding was also crowded; and whether the defendant was negligent in permitting its trains to be thus crowded was a question of fact, which possibly might with propriety have been submitted to the jury, if there had been any evidence from which they could have found that the overcrowding either caused or contributed to the accident. There was, however, no such evidence. Only one witness was called by the plaintiff who gave testimony concerning the happening of the accident itself, and even this witness did not

see the intestate until after he had fallen from the platform. This witness (McIlravey) testified that the "car was packed inside and outside"; that the passengers were "all squeezed up against one another"; that the train, after stopping just south of the curve at Twenty-Third street, "started very suddenly," so that "everybody lurched forward," and then "all came back again—fell back on each other"; that immediately after the train had thus started he felt some one pulling on his coat tail, and, turning around, saw the intestate with his leg "down between the bumpers of the cars, between the two platforms of the two cars"; and that he "did not exactly see the accident." The evening was a stormy one, and the platforms were wet and slippery with snow that had been brought upon them by the passengers; and whether the intestate simply slipped and fell by reason of this condition, or whether he was pushed by the other passengers upon the car, the witness does not attempt to state, as, indeed, he could not, for the reason, as already said, that he did not see the intestate until after he had fallen.

On behalf of the defendant the guard upon the car, Siebert, was called, and testified that, "going around the curve, the man's foot went in from under him, and went down in between the cars. The man's foot slipped from under him"—and that he did not see any one thrown against the man, or any jostling or any lurch. The witness Scheler, a passenger, testified that, "when the car turned," the intestate "lost his balance * * * and slipped in between the two cars"; and another passenger, Komblatt, testified to the same effect. Cowan, a foreman for the Metropolitan Railroad Company, and also a passenger, testified that, "as the car took the curve to go around, this man had slipped. * * * His foot went right from under him and slipped down between the cars." This witness further said: "At the time the car turned the curve, I was looking in the direction of the man that fell. There was nobody shoved against one another there at that point; not at that time." All of the witnesses called on behalf of the defendant testified that there was no sudden jerk or jolt in starting the train, and the court properly eliminated this element of alleged negligence from the consideration of the jury; placing the plaintiff's right to recover, if at all, upon the overcrowding of the car.

It appeared that the cars were vestibuled, with the front and rear platforms inclosed, so that there was no place where injury to a person standing upon them might be apprehended, except at the space necessarily left open for a passageway between the different cars of the train, and where the guard was stationed for the purpose of operating the doors to permit the entrance and exit of passengers. There is no claim made that it was negligence to allow a passenger to stand within this vestibule, unless the defendant had permitted it to become so crowded that a reasonably prudent person would apprehend danger from the situation; but, as already pointed out, even if the jury would have been justified in finding that the platform was so overcrowded, nevertheless there is no

proof from which it could have been found that the plaintiff's intestate fell or received his injuries by such overcrowding. It will not do to permit a jury to speculate that some one upon the platform might have jostled against him and thus caused the injury. Not a single witness testified that the pushing or crowding of the other passengers caused his leg to get between the bumpers of the car. Indeed, all those who saw the man at the moment the accident happened testified, not that he was pushed, but that his foot slipped and he fell. If the accident happened in this way, it was not caused by any negligence on the part of the defendant, and for this reason the verdict is not supported by the evidence.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur. INGRAHAM, J., concurs in result. HATCH, J., dissents.

INGRAHAM, J. I concur with Mr. Justice O'BRIEN, except that I do not agree with the statement that, because the car was crowded and the deceased voluntarily placed himself on the platform, there was a question for the jury.

