Frederick W. Tietz, Respondent, v. International Railway Company, Appellant.

Negligence — Street Surface Railroad Operated by Trolley System — When Railroad Company Not Liable to Passenger Injured by Trolley Pole While Passing Along Running Board of Open Car. Where the road, tracks, poles and cars of a street surface railroad, operated by electricity by an overhead or trolley system, were in proper shape and condition and the trolley poles were located at such a distance from the tracks that they were unlikely to endanger passengers of normal size making the ordinary and customary use of the running boards of open cars, the railroad company is not liable for injuries sustained by a passenger of unusually large size from being struck by a trolley pole while he was attempting to pass along the running board of a moving car from the rear end to a seat nearer the front merely because the conductor, when told by the passenger that he intended to change his seat, assented thereto; a contention that the conductor was chargeable with knowledge of the position of the poles, the construction of the car, the size of the plaintiff and was, therefore, negligent in assenting to the act of the passenger, in leaving his place on the rear of the car to go in front without giving him some warning or intimation of the danger involved in such a movement is not tenable, where there is no evidence that the conductor knew that the passenger was not acquainted with the conditions surrounding him and it was entirely possible by the exercise of care for the passenger to have changed his seat as he desired by proceeding along the running board on the other side of the car or by waiting until the car was between two of the trolley poles, when he would incur no danger; and where there appears to have been nothing in the expression of his intention to make the change which would necessarily indicate to the conductor that he proposed to attempt it at the precise time when he did.

Tietz v. International Ry. Co., 107 App. Div. 620, reversed.

(Argued October 18, 1906; decided November 13, 1906.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 14, 1905, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles B. Sears* for appellant. There is an entire absence of evidence of negligence on the part of the Niagara Falls

Park and River Railroad Company, for which the defendant
was liable. (*Craighead* v. *B. C. R. R. Co.*, 123 N. Y. 391;
*Murphy* v. *N. A. R. R. Co.*, 6 Misc. Rep. 298; 149 N. Y.
609; *Moody* v. *S. S. Ry. Co.*, 182 Mass. 158; *Woodroffe* v.
*R. C. H. & N. Ry. Co.*, 201 Penn. St. 521.) The plaintiff
was guilty of contributory negligence. (*Coleman* v. *S. A.
R. R. Co.*, 114 N. Y. 609.)

*Philip A. Laing* and *Hamilton Ward* for respondent.
The railroad company, by its conductor, was bound to exer-
cise care in an affirmative way to prevent injury to the plain-
tiff. (*Cattano* v. *M. S. R. Co.*, 173 N. Y. 565; *Koehne* v.
*Q. C. R. R. Co.*, 32 App. Div. 419; 165 N. Y. 603; *Stierle*
v. *U. R. Co.*, 156 N. Y. 70.) It was the duty of the con-
ductor to warn the plaintiff. (*Brockway* v. *Lascala*, 1 Edm.
Sel. Cas. 135; *Lent* v. *N. Y. C. & H. R. R. R. Co.*, 120
N. Y. 467; *Wilder* v. *M. S. R. Co.*, 10 App. Div. 364; 161
N. Y. 665; *Clume* v. *B. E. R. Co.*, 15 N. Y. S. R. 825;
*Clark* v. *E. A. R. Co.*, 36 N. Y. 135; *Craven* v. *I. R.
Co.*, 100 App. Div. 157; *Lucas* v. *M. S. R. Co.*, 56 App.
Div. 405; *Gatens* v. *M. S. R. Co.*, 89 App. Div. 311;
*Sheeron* v. *C. I. R. R. Co.*, 89 N. Y. 338; *Lansing* v. *C. I.
R. R. Co.*, 16 App. Div. 146; *Graham* v. *M. R. Co.*, 149
N. Y. 336.) The plaintiff was not negligent. (*McIntyre* v.
*N. Y. C. & H. R. R. R. Co.*, 37 N. Y. 287; *Clark* v. *E. A.
R. R. Co.*, 36 N. Y. 135; 8 Hun, 494; 67 N. Y. 596; *Filer*
v. *N. Y. C. & H. R. R. R. Co.*, 49 N. Y. 47; 59 N. Y. 351;
*Maher* v. *C. P., N. & E. R. R. Co.*, 67 N. Y. 52; *Brainard*
v. *N. E. R. R. Co.*, 44 App. Div. 613; *Gray* v. *M. S. R.
Co.*, 39 App. Div. 536; *Nolan* v. *B. C. & N. R. R. Co.*, 87
N. Y. 63; *Gray* v. *R. C. & B. R. R. Co.*, 61 Hun, 212;
*Still* v. *N. E. R. R. Co.*, 32 App. Div. 276; *Henderson* v.
*N. E. R. R. Co.*, 46 App. Div. 280.)

WILLARD BARTLETT, J.   This is an action to recover dam-
ages for personal injuries sustained by the plaintiff while a
passenger upon an electric car operated by the Niagara Falls

Park and River Railway Company in the Dominion of Canada on September 10, 1899. The defendant is the successor in interest of that corporation and no question is raised as to its liability herein in case there is any liability at all. The accident out of which the action arose occurred while the plaintiff was endeavoring to change his seat in the car. For this purpose he stepped down upon the running board, and while there his body was brought into collision with one of the trolley poles between the tracks and he was thrown down and injured. The plaintiff was a large man, weighing two hundred and fifty pounds, and measuring twenty-four inches across the shoulders and twenty inches through the body. He had never before visited Niagara Falls, in the vicinity of which the accident occurred. Having crossed the arch bridge into Canada he took passage on the car, which was bound southward along the edge of the gorge. It was an open car with cross seats and one seat at the rear end facing backward. The plaintiff took this seat within a few feet of the place where the conductor stood. There were no other passengers on that portion of the car. When the car stopped at a place known as the Dufferin Café many of the passengers alighted and the plaintiff observed that the two rear seats in the body of the car were vacant. Thereupon he remarked to the conductor: " I see them two rear seats are empty. I will take one of those seats." To which the conductor responded, " Go and take it with pleasure," or as the plaintiff stated on cross-examination, " Take one with pleasure." Then, according to the plaintiff's testimony, he swung out to get into the other seat but came into contact with the trolley pole, the car being then running, according to his estimate, at a rate of from eight to ten miles an hour. Although there was evidence in behalf of the defendant to the effect that the conductor shouted, " Look out for the pole," the plaintiff testified that the conductor said nothing more than has already been stated and did not say anything about the trolley pole. The proof is that the distance between the so-called grab handles on the outside of the upright stanchions of the car and the trolley

pole was twenty-one inches, according to the evidence in behalf of the plaintiff, and twenty-two inches according to the evidence in behalf of the defendant. The plaintiff made the further statement that when he started to go out on the running board to change his seat the conductor was looking at him.

The case went to the jury solely on the question whether there was negligence on the part of the conductor in having either in his words or by his conduct assented to the act of the plaintiff in leaving his place on the rear of the car to go in front, without giving some warning or intimation of the danger involved in such a movement. The learned trial judge expressly ruled that the railroad company had the right to construct its tracks and poles in the way in which they were constructed and to run its cars in the manner in which they were run, and that the cars were in proper shape, the road was in proper shape, and the poles were in proper condition. The question presented by this appeal, therefore, is whether the conductor in charge of the car upon which the accident occurred was negligent either in giving the plaintiff a false assurance of safety or in failing to give him a proper warning.

In the case of a railroad company which is a common carrier of passengers it may be assumed that where a danger arises which is unknown to the passenger but which is known, or ought to be known, to the agents of the carrier charged with the management of the train, a duty exists on the part of those agents to warn the passenger of the danger or to take some other means to guard him against it. The present case, however, involves the question whether any duty to warn exists where all the conditions which constitute the danger are as observable by the passenger himself and apparently as obvious to him as they are known to the agents or servants of the common carrier. In the simple assent of the conductor to the proposal of the plaintiff to change his seat I am unable to perceive any assurance on the part of the conductor that it would be safe for the passenger to do so without the exercise of due care on his part in executing the necessary movement. The construction of the car and of the railroad line and the

position of the trolley poles and the size of his own body were just as patent to the plaintiff as they could have been to the conductor. It is true the plaintiff says he was sitting on the rear end looking at the American side and the scenery and did not notice the location of the trolley poles. We must also accept as true his statement that he had never been over the line before. These facts, however, could hardly have been known to the conductor. The learned counsel for the respondent insists that the conductor was chargeable with knowledge of the position of the poles, the construction of the car, the size of the plaintiff *and the fact that the plaintiff was ignorant of the conditions surrounding him;* but I can find nothing in the record which furnishes any basis for the assumption that the conductor knew that the plaintiff was not acquainted with these conditions. He certainly appears to have had the amplest opportunity to notice them. It was entirely possible by the exercise of care for the plaintiff to change his seat as he desired by proceeding along the running board on the other side of the car or by waiting until the car was between two of the trolley poles, when he would incur no danger; and there appears to have been nothing in the expression of his intention to make the change which would necessarily indicate to the conductor that he proposed to attempt it at the precise time when he did.

It seems to me quite clear that it would be going too far to hold the railway company responsible for the failure of a conductor to warn a passenger under the circumstances presented by this record. Although the duty to warn has frequently been asserted I have been unable to find any case with a single exception hereafter to be noted which lays down so stringent a rule against a common carrier as would be established by the affirmance of this judgment. No doubt there is an implied duty on the part of a railroad corporation engaged in the transportation of passengers to employ a competent conductor. (*Lambeth* v. *N. C. R. R. Co.*, 66 N. C. 494.) While a passenger may properly assume that a conductor knows whether he can under the particular circum-

stances get on or off or move upon the train with safety (*Filer* v. *New York Central R. R. Co.*, 59 N. Y. 351), yet where it is plainly open to his observation that reliance upon the judgment of those placed in charge of a train will expose him to risk that a reasonably prudent man will not assume, the passenger is not justified in assuming the risk. (*Cincinnati, etc., R. R. Co.* v. *Carper*, 112 Ind. 26.) The cases in which negligence has been imputed to a railroad company for the failure of those in charge of the train to give proper warning to the passengers have been cases in which the passengers were ignorant of the conditions which constituted the danger to which they were exposed. Thus, a typical case is *Gonzales* v. *N. Y. & Harlem R. R. Co.* (39 How. Pr. 407), where the plaintiff's intestate was killed on the defendant's railroad immediately after leaving the car of an accommodation train on which he was a passenger, being run down by an express train coming in the opposite direction upon a track on the west side of the train which he had just left; and this court held that it was the duty of the conductor and engineer to see that the passengers should be prevented from leaving the train on the west side, " or at least to give them notice of the approaching train and to request them either to sit still until that train had passed or to leave the train on the east side," and that the omission to do so constituted negligence.

None of the authorities cited in the brief for the respondent in support of the proposition that it was the duty of the conductor to warn the plaintiff seems to me to support his contention in that respect. I have carefully examined them all and deem them readily distinguishable in principle from the case at bar. *Lent* v. *N. Y. C. & H. R. R. R. Co.* (120 N. Y. 467) was a case of assurance of safety to the passengers to proceed from one car to another, and invitation to do so, based on the fact that the conductor had called out "all aboard." In *Wilder* v. *Metropolitan St. Ry. Co.* (10 App. Div. 364; affd., 161 N. Y. 665) a passenger was thrown from her seat in one of the defendant's cars when it was passing over a sharp curve. The court said : " If warning to the passengers

in the car was reasonably necessary for their protection or safety it was the duty of the defendant to give them the benefit of it." I cannot see how this proposition as applied to the circumstances of that case has any bearing upon the question presented here. In *Clune* v. *Brooklyn Elevated R. R. Co.* (15 N. Y. S. R. 825) the plaintiff attempted to step from one car to another. Their platforms were in contact when the train was still, but pulled apart when the train was started, and the plaintiff fell into the opening. The General Term of the second department held that the conductor, if he heard the proposal of the plaintiff to cross, owed her the duty to warn her of the danger. This was on the assumption that the danger was unknown to the plaintiff. *Clark* v. *Eighth Ave. R. R. Co.* (36 N. Y. 135) merely holds that an invitation to ride on the platform of a street car, and an assurance that it is a safe and suitable place, may be implied from the fact that the car and platform were full of passengers, without room for more, and that the conductor called for and received the fare from the plaintiff. These facts have no resemblance to those in the case at bar. In *Craven* v. *International Ry. Co.* (100 App. Div. 157) a passenger who had just alighted from a car for the purpose of making a transfer was struck and injured by another car. She had been invited or directed to make her transfer where she did. This was held by the Appellate Division of the fourth department to be "somewhat of an assurance that she would have an opportunity to make such transfer in safety." The only proposition in *Lucas* v. *Metropolitan St. Ry. Co.* (56 App. Div. 405) which relates in any manner to the duty to warn passengers is contained in these words in the opinion : "When it (defendant) was about to run its car around the curve at the speed set out in the record, it owed the plaintiff a duty of informing him of that fact, or indicating to him in some way that he must exercise at that point increased care for his own safety." *Gatens* v. *Metropolitan St. Ry. Co.* (89 App. Div. 311) merely emphasizes the duty to warn a passenger on a car platform of the danger to be apprehended in approaching an unknown curve

in the road. The opinion in *Sheeron* v. *Coney Island &
Brooklyn R. R. Co.* (89 App. Div. 338) does not indicate
that any question whatever of assurance or warning was
involved in that case. The same is true of *Lansing* v. *Coney
Island & B. R. R. Co.* (16 App. Div. 146). In *Graham* v.
*Manhattan R. Co.* (149 N. Y. 336), where the plaintiff was
injured while a passenger upon a platform of one of the
defendant's cars, it was said by MARTIN, J.: "Even if the
plaintiff assumed the ordinary risk which attended riding
upon the platform, he had a right to assume that the defend-
ant's servants would cause no unusual disturbance of the
crowd and that the cars were so constructed as not to render
his position dangerous from their proximity to each other in
passing over any portion of the road, or at least if such danger
existed that he would be apprised of it." This decision
simply asserts the obligation to warn against a danger
unknown to the passenger. There was no question of failure
to warn the passenger of danger in *Gray* v. *Metropolitan St.
R. Co.* (39 App. Div. 536). Although he stood with but one
foot on the platform, the plaintiff was deemed to be a pas-
senger "by the express invitation or acquiescence of the
defendant's employees" because the conductor had taken up
his transfer ticket. In *Henderson* v. *Nassau Electric R. R.
Co.* (46 App. Div. 280) the plaintiff, seeking passage in an
open car of the defendant, which was crowded, was moving
along the running board in search of a seat when he was struck
by a van which the motorman had previously signaled to get
out of the way and which had stopped within about two feet
of the track. It was held that the defendant was chargeable
with notice that the distance was insufficient for persons upon
the running board to escape contact with the van unless they
observed it and bent their bodies inward toward the car. *Lehr*
v. *Steinway & H. P. R. R. Co.* (118 N. Y. 556) was a case
in which the plaintiff, after procuring a seat for his wife in
one of the defendant's cars, claimed that he had been com-
pelled to ride on the step of the front platform by rea-
son of the crowded condition of the car. He was thrown

off by a movement of the passengers on the platform. It was held that the question of the defendant's negligence and the plaintiff's contributory negligence were properly submitted to the jury. The case of *Gleason* v. *Metropolitan St. R. Co.* (99 App. Div. 209) turned on the exclusion of evidence tending to prove the existence of a custom to receive passengers at a particular place, and is not perceived to bear any possible relation to the questions involved here. The case of *Kohm* v. *Interborough Rapid Transit Co.* (104 App. Div. 237) related to an injury attributed to the overcrowding of one of the defendant's cars. No reference is made in the opinion to any liability predicated upon a failure to warn the injured passenger.

The single case which tends to uphold the position of the respondent is *West Chicago Street R. R. Co.* v. *Marks* (182 Ill. 15). There it appeared that the defendant corporation operated open cars, along each side of which were running boards which, though designed as steps, were nevertheless often used by passengers to stand upon, sometimes when there was no room elsewhere in the car, and sometimes from choice. The plaintiff on boarding the car found all the seats occupied, as well as the aisles between the seats, and also the running board on the right-hand side of the car. He, therefore, in company with other passengers, got upon the left-hand running board. While in this position the car passed a viaduct which was between twelve and fourteen inches distant from the car. The plaintiff knew nothing about this structure, and was not warned of it by the defendant or any one else. There was no danger in riding on the footboard to one who knew of the existence and nearness of the viaduct, as it could have been avoided by standing close to the car. Upon these facts a judgment upon a verdict in favor of the plaintiff was affirmed by the Supreme Court of Illinois, which held that negligence could be imputed to the defendant corporation in running its cars so near to a fixed structure without warning the passengers who were in a position to sustain injury if not duly cautioned.

The distinction between this Illinois case and the case at bar lies in the fact that the viaduct there in proximity to the railroad was no part of the railroad line, and was so close to the track that persons riding on the running board were obliged to take special care to avoid contact with it, while here the distance between the trolley poles and the car was shown by uncontradicted evidence to be great enough to enable persons ordinarily to stand upon or pass along the running board in safety, and the trial court expressly negatived the idea that any negligence could be predicated upon the manner in which the railroad was constructed and maintained. Indeed, there was no evidence that the construction of the railroad here was unusual, or that the distance between the running boards of the car and the trolley poles was such as was likely to endanger passengers making the ordinary and customary use of such running boards, or that the manner in which the road was built and maintained was in any respect such as to render the railroad company chargeable with negligence in the maintenance of the various structures making up the line as they existed at the time of the accident. This court said in *Craighead* v. *Brooklyn City R. R. Co.* (123 N. Y. 391), where the defendant's cars passed one another at a distance of seventeen inches: "The defendant was not bound to so construct its tracks that it would be impossible for a passenger to be struck by another car while he was standing on the outside of an open one."

I concede the correctness of the general proposition that if the company had created a danger it was its duty to warn its passengers against that danger, but under the charge of the trial judge and upon the theory on which the case was submitted to the jury the appellant had not created any danger in the proper sense of that term. Doubtless the presence of trolley poles is dangerous to any one riding on a car who may come in contact with them. So, also, there are dangers in the operation of every steam railroad, but these dangers are inherent in the operation of the roads and do not fall within the rule I have stated. If there was anything exceptional in

the proximity to the track of the trolley poles or any other obstruction it would have been the duty of the conductor to warn the plaintiff of its existence, but I cannot see that it was his duty to warn the passenger of a danger which is merely an ordinary incident of such railroad travel. This is the crux of this case and the sole question that was submitted to the jury. Take the case of the trolley roads which run under the elevated railroads in the city of New York. It cannot be that it is the duty of the conductor to warn every passenger of the presence of the pillars of the elevated railroad, nor can he be expected for this purpose to distinguish between residents of the city accustomed to travel on the road and passengers who are strangers. In *Murphy* v. *Ninth Ave. R. R. Co.* (6 Misc. Rep. 298 ; affd., 149 N. Y. 609) the plaintiff while moving from the rear toward the front of the defendant's open car on the step which ran along the westerly side collided with an elevated railroad column and was thereby knocked off the car. The distance between the stanchion of the car and the nearest part of the column was fifteen inches. It appeared that he could have changed his position by proceeding along the easterly side of the car where there were no columns to interfere with his movements, and it was held that the injury to the plaintiff, if due to any negligence, was due to his own rather than that of the defendant.

I think this judgment should be reversed and a new trial granted, costs to abide event.

VANN, J. (dissenting). The plaintiff was a passenger and entitled to the high degree of care to which that relation to the defendant gave him the right by law. He was a stranger to the locality, the railway and its surroundings. He had never seen Niagara Falls before and had taken passage in an observation car of unusual size, used in a national park to enable strangers from all over the world to see the wonderful scenery. He did not pay for transportation simply, as the main object was the privilege of sight-seeing. The management must be presumed to have known that the eyes of its

passengers were .not fixed upon objects near the track and away from the river, but on the grandeur of the view which they were invited to enjoy. The want of care by either party to the action should be considered in the light of that fact. The evidence, *me judice*, warranted the inference drawn by the jury that the defendant was negligent and the plaintiff free from negligence.

What are the facts? The plaintiff was on the Canadian side looking across the river at the scenery on the American side. He was of such huge size that it was obvious at a glance that he could not pass through the narrow space between the car and the trolley pole at the place where the accident occurred without the utmost danger. The double tracks converged somewhat at this point only, which was known to the defendant and the conductor, its agent in charge of the car, but not to the plaintiff. The trolley poles are between the tracks, except for a space of several hundred feet which includes the place of the accident, where they come together and interlock. In the language of the engineer who made the measurements " the easterly rail of the west track crosses the westerly rail of the easterly track," and at this point the trolley poles, which elsewhere are between the tracks, are on the side farthest from the river. The plaintiff gave notice of his intention to pass through said narrow place, which involved a danger known to the conductor but unknown to himself, for the jury could find that it was not obvious even to a vigilant passenger on his first trip over the road. The situation was dangerous at one particular point which he had never seen, though safe over the rest of the road. There was no notice to warn passengers, nor safeguard to protect them. The conductor told the plaintiff to go, and, as he went, kept looking at him. He saw him enter upon the perilous passage, but gave no warning. Knowing the danger to one for whose safety the law commanded him to exercise the highest degree of care, he exercised no care, but let him go on to ruin without lifting his voice to prevent. He was the son of the superintendent of the road and but seventeen or eighteen

years of age. What he failed to do, the defendant failed to do and his omission was negligence on its part, as the jury properly found.

The plaintiff exercised some care, for he notified the conductor of what he was going to do and was told to do it. The circumstances made this an assurance of safety, upon which he had a right to rely. Why did he speak to the conductor except to learn whether it was safe to then and there change his seat, and why did the conductor tell him to go and take the other seat unless he intended to assure him it was safe to do so? What was the running board for, if not for the use of passengers? What he did was not dangerous except under the peculiar facts of which he was ignorant, but which the conductor knew or should have known. People were permitted to stand on the running board at all other points on the road and to ride thereon at will.

Is it negligence, as matter of law, for a passenger to do what the conductor tells him to, especially when he looks at him in silence while he does it? Could not the jury find from the evidence that the plaintiff, under the circumstances, was not bound at the peril of his life to observe the precise situation of a single trolley pole with reference to the track and to measure with exactness its distance from the moving car at one particular point, differing from all others, when he had paid the defendant for the privilege of witnessing from an observation car a grand sight, in the opposite direction from the pole and had received from its conductor an assurance of safety? The situation and surrounding circumstances, what the conductor said and did and the right of the plaintiff to rely thereon, were some evidence on the question of contributory negligence, which, therefore, was for the jury. I do not quarrel with the law of my learned brother who has written so ably for the court, but I deny that it applies to this case and invoke the principle that it is the duty of common carriers to warn their passengers of a danger of their own creation, which, while it could be seen, the passenger was not bound by law to see after an assurance of safety had

been given by the conductor in charge.   The rule of " utmost. care" made for the protection of passengers should not be relaxed, for the safety of the citizen is the highest concern of the state.

I vote for affirmance.

CULLEN, Ch. J., HAIGHT and WERNER, JJ., concur with WILLARD BARTLETT, J.; VANN, J., reads dissenting opinion; HISCOCK, J., not sitting; GRAY, J., absent.

Judgment reversed, etc.