## EDWIN A. MILLIKEN *vs.* RHODE ISLAND COMPANY.

### MARCH 1, 1917.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Carriers. Contributory Negligence. Location of Tracks and Poles.*
Plaintiff was an employee of a company which had hired a special car from defendant, one of his duties being to verify the number of passengers. There were trees and poles along the side of the track. While plaintiff was moving outside of a passenger, on the running board, he came in contact with a pole and was injured. Plaintiff had been similarly engaged for some months, and had been over the same route daily for three weeks. The passengers on the running board were not hit by the pole. Plaintiff admitted that he knew that trees and poles were alongside the track and that he was not looking for them.

*Held*, that plaintiff in swinging out as stated, without first looking ahead for obstructions with which he might come in contact, was guilty of contributory negligence.

*Held*, further, that defendant was not negligent in maintaining the pole in the position which it did, it being sufficiently removed from the track to permit passengers to stand upon the running board in the manner in which they would be expected to stand there — two feet from the outer edge of the running board — without suffering injury.

*(2) Carriers. Negligence. Location of Tracks and Poles.*
A railroad company to avoid negligence, is not compelled to so construct and locate its tracks and poles that it will be physically impossible for passengers to bring themselves in contact with the latter, but is only required to construct, arrange, locate and operate its instrumentalities in a manner which shall suitably provide for the safety of passengers while they are acting within the scope of their privileges or within such limits as may be reasonably anticipated.

*(3) Carriers. Negligence. Known Danger. Warning.*
A carrier is not obliged to give warning of a known danger or one which should have been obvious to the injured party.

TRESPASS ON THE CASE for negligence. Heard on exceptions of plaintiff and overruled.

VINCENT, J. This is an action of trespass on the case for negligence to recover damages for personal injuries sustained by the plaintiff while riding upon one of defendant's cars on the 20th day of June, 1914.

The case was tried in the Superior Court, where, at the conclusion of the plaintiff's testimony, and upon motion of the defendant, a nonsuit was granted. To·that ruling of the trial court the plaintiff took an exception and such exception is now before us for consideration.

The plaintiff for some time prior to the accident had been engaged in the business of selling house lots on the Hunts Mills Plat, so-called, in the town of East Providence, as agent or employee of the Wilbur Land Company. To facilitate the sale of these lots the land company from time to time hired from the defendant a special car for the purpose of transporting, free of charge, such persons as might desire to attend its sales. The plaintiff, as one of the employees of the land company, accompanied the car on these trips, one of his duties being to ascertain the number of passengers thereon for the purpose of verifying the count of the conductor. The contract between the land company and the defendant evidently contemplated the transportation of a certain number, upon each trip, for a lump sum, and provided that a regular fare should be paid for each person in excess of the number agreed upon.

In making these trips the car went to the Hunts Mills Plat in the afternoon by way of Taunton Avenue, and after the sale returned to the city of Providence by the same route. In the town of East Providence there are trees and poles along the side of the track. At the point where the accident occurred the railroad track is located upon the side of the road. On the day of the accident, as the car was making the return trip, and while the plaintiff was passing along the running board for the purpose of counting the passengers, and while he was moving around and outside of another passenger, weighing about one hundred and ninety pounds, he came in contact with one of the trolley poles and was knocked off and injured. The distance from the face of the pole to

the outer edge of the running board was two feet. The car was crowded and about fifteen or twenty persons were standing upon the running board, according to the estimate of some of the witnesses.

The plaintiff had been employed by the land company for some months, and during that time he had been similarly engaged with special cars hired by the land company for the transportation of passengers to various localities in connection with the sale of land, and upon these trips he had made use of the running board, in counting the passengers, after the manner in which such running boards were used by the conductors. The plaintiff had been over the particular route upon which he was injured every day for three weeks prior to his accident, and must have passed the pole, with which he finally came in contact, at least thirty-five times prior to making the trip upon which he was injured.

There is evidence that the poles in this locality were not uniform in their distance from the track, and that the pole with which the plaintiff came in contact was situated somewhat nearer to the track than some of the other poles in that vicinity, but these variations do not seem to us to be sufficient to be of importance in the consideration of the present case.

The other passengers standing upon the running board, in the manner and position passengers usually do, were not touched by the pole, and so far as appears there had never been any similar trouble on this route during the years the road had been in operation.

The several counts of the plaintiff's declaration set forth the negligence of the defendant in two particulars: (1) in maintaining its pole so close to the track that persons riding on the running board might come in contact therewith, such close proximity being unknown to the plaintiff, and (2) in failing to warn the plaintiff of the nearness of the pole to the track. The plaintiff also

alleges that at the time of the accident he was in the exercise of due care.

On the other hand, the defendant denies that it has been guilty of any negligence and contends that the plaintiff was negligent in a manner which contributed to and brought about the accident.

We do not think that the negligence of the defendant in the maintenance of its pole has been established. The pole located two feet away from the outer edge of the running board was not an element of danger either to passengers riding in the car or to those who might occupy the running board in the manner in which passengers usually employ it. The passengers on the car who were standing on the running board at the time of the accident, in the customary way, were not hit by the pole, and were not in danger of coming in contact therewith. The only way in which a passenger upon the running board could bring himself in touch with the pole would be to place himself in some position which passengers do not ordinarily, and cannot reasonably be expected to, assume. A railroad company, in order to avoid becoming negligent, cannot be compelled to so construct and locate its tracks and poles that it will be physically impossible for a passenger to bring himself in contact with the latter.

(2) The duty of the defendant to the public only requires that its instrumentalities shall be constructed, arranged, located and operated in a manner which shall suitably provide for the safety of its passengers while they are acting within the scope of their privileges or within such limits as may be reasonably anticipated.

The testimony of the plaintiff himself is quite comprehensive of the circumstances surrounding the accident. It shows that during the three weeks immediately preceding he had traversed this route in the daytime and under the same general conditions some thirty-five times; that he had been engaged in the same occupation for the

Wilbur Land Company upon this and other routes from March to the time of the accident; that before coming to Providence he had worked in the same capacity in several other cities for parties doing a business similar to that of the Wilbur Land Company and employing the same methods of transporting passengers by special cars; that he knew that trees and poles " were alongside any track." He does not claim that he made the least effort, either before or at the time of passing the man on the running board, to ascertain if there was danger of coming in contact with any adjacent object. In fact, he distinctly says that he was not looking for poles.

The language used by this court in the case of *Savage* v. *Rhode Island Company,* 28 R. I. 391, seems to fit with unusual exactness the circumstances of the present case. In the *Savage* case the plaintiff's intestate entered the employ of the defendant the day before he was killed and made three trips, with an experienced conductor, that day, and the next day took full charge of the car. On the trip when he was killed the car was crowded and passengers were standing on the running board, which was down on the side adjacent to the sidewalk. The track was near to a series of electric light poles. In collecting fares he had to pass outside of a man standing on the running board, and in so doing his head came in contact with an electric light pole located beside the track and he was knocked to the ground. The pole in question was somewhat nearer to the track than others, but had been in the same position for a long time. The court in its opinion said: " So far as the evidence introduced by the plaintiff is concerned, it does not appear that the deceased conductor, at the time he was on the running board, took any precautions whatever, by looking ahead to see whether he could safely swing out to pass by a passenger standing upon the running board at the time when he did so attempt to pass and was injured. It must have been

known to him that there were poles and trees and similar obstructions all along the line of the road; and while he would be justified, in the absence of special warning or of actual knowledge, in assuming he could safely stand and pass along the running board without danger in the ordinary way, he would not be justified in assuming that he could at any time or place swing out to any distance he might find convenient for the purposes of passing passengers standing upon the running board. If it became necessary, as it often is, so to swing out and pass, it would plainly be his duty to look ahead and see that he could pass safely in that manner. The testimony does not show that the pole in question was so near as to endanger passengers standing straight upon the running board; in fact, it shows the contrary, for it appears that there were several persons standing upon the running board at this time, none of whom were hurt, including the passenger around whom the deceased was passing at the time of accident.''

See, also, *Flynn* v. *The Consolidated Traction Company*, 64 N. J. L. 375; *Cummings* v. *W. L. & S. St. Ry. Co.*, 166 Mass. 220; *Nugent* v. *New Haven St. Ry. Co.*, 73 Conn. 139; *Tietz* v. *International Ry. Co.*, 186 N. Y. 347; *Sibley* v. *New Orleans City & Lake R. R. Co.*, 49 La. Ann. 588; *Fraser* v. *California St. Cable Ry. Co.*, 146 Cal. 714. It seems unnecessary, however, to refer to cases in other jurisdictions bearing upon the points covered in *Savage* v. *Rhode Island Company, supra.*

In the case at bar the plaintiff had ridden over the road many times, as well as upon other roads of a similar character where trees and poles were situated near the track. As the pole in question was two feet from the outer edge of the running board, he must have projected his body to that extent beyond the limits of the car or he could not have come in contact with it.

As to the plaintiff's claim that he should have been

(3) warned by the defendant as to the proximity of the pole, it may be said that it is well established by authority that there is no obligation to give warning of a known danger or a danger which should have been obvious to the injured party.   *Wells* v. *Joslin Mfg. Co.,* 33 R. I. 498; *Benson* v. *N. Y., N. H. & H. R. R. Co.,* 23 R. I. 147; *Fortin* v. *Manville Co.,* 128 Fed. 642; *Tietz* v. *International Ry. Co.,* 186 N. Y. 347; *Craighead* v. *Brooklyn City R. R. Co.,* 123 N. Y. 391.

A nonsuit was granted by the trial court upon two grounds, (1) that the plaintiff, in swinging out to go by a passenger on the running board without first looking ahead to see if there was any obstruction with which he might come in contact, was guilty of contributory negligence, and (2) that the defendant was not negligent in maintaining the pole in the position which it did, such pole being sufficiently removed from the track to permit passengers to stand upon the running board in the manner in which they would be expected to stand there, without suffering injury.   We think that the nonsuit was properly granted upon both grounds.

As the plaintiff has confined himself both in his brief and argument to his exception relating to the granting of the non-suit, he must be deemed to have waived all other exceptions.   The plaintiff's exceptions are all overruled and the case is remitted to the Superior Court with direction to enter judgment for the defendant on the nonsuit.

*McGovern & Slattery,* for plaintiff.

*Clifford Whipple, Alonzo R. Williams,* for defendant.