THERESA MORGAN, Plaintiff, *v.* OCEANIC STEAM NAVIGATION CO., LIMITED, Defendant.

City Court of New York, New York County, October 19, 1927.

**Ships and shipping — negligence — action to recover for personal injuries suffered by plaintiff while passenger — plaintiff, experienced sea traveler, was sitting on deck when high waves broke windows and caused injuries — plaintiff was guilty of contributory negligence in staying in position obviously dangerous — ticket constitutes contract — limitation of notice of claim to three days after landing is reasonable.**

The plaintiff, an experienced ocean traveler, suffered an injury while she was sitting on the deck of one of defendant's steamers while at sea. The evidence shows that the plaintiff observed that the water was becoming rougher and the waves higher and that occasionally they struck the windows on the deck on which she was sitting. While tea was being served by the stewards on the deck, a high wave struck the ship, broke the windows along the deck and caused the injuries which plaintiff suffered. Under the facts, plaintiff was guilty of contributory negligence in exposing herself in a position which was obviously dangerous and no obligation can be fixed on the defendant for failing to warn the plaintiff that she was in a dangerous position.

The ticket which was given the plaintiff for passage constituted a contract between the parties, binding upon both.

The provision in the ticket, requiring the holder to give notice of any claim to the shipowner or agent within three days after the holder shall have landed, is reasonable and constituted a valid limitation.

MOTION by plaintiff for new trial after nonsuit at close of her case.

*Hatch & Wolfe [Carver W. Wolfe of counsel], for the plaintiff.*

*Burlingham, Veeder, Masten & Feary [William Paul Allen and C. B. Manley O'Kelley of counsel], for the defendant.*

FINELITE, J.   The court granted a nonsuit at the close of plaintiff's case, but entertained plaintiff's motion for a new trial.

Plaintiff contends that her uncontradicted evidence shows the defendant was negligent in failing to warn her of the dangers to be encountered, and that it is a general rule of law where a situation of danger arises that it is the duty of the carrier to warn the passengers of such danger, and that if no warning is given, and injury results, the carrier is thereby rendered liable.

The action was brought for personal injuries sustained by the plaintiff while a first-class passenger on board the steamship *Homeric* on August 26, 1924.   The plaintiff, Theresa Morgan, testified at the trial of this action that she had purchased a passenger ticket and was received on board the steamship *Homeric* as a passenger; that on the 26th day of August, 1924, when the vessel was two days out from New York, she sustained the injuries complained of while she was sitting in a deck chair on "B" deck.   She further testified that on the day in question the vessel had been going through bad weather for two or three hours prior to the time of the accident.

She testified that the "B" deck, where she was sitting, is equipped with movable glass windows, which are set in the rail of the vessel and can be raised or lowered at will, and that when she came on the deck these windows were raised, so that they operated as a barrier to keep out the sea.   She testified that from the time she first came on deck in the afternoon until the time of the accident the waves were becoming higher, and that several waves had struck the windows, allowing the water and spray to come in around the edges of the windows; that about four-thirty in the afternoon, while being served tea by the stewards of the vessel, a large wave struck the windows, breaking several of them and flooding the deck with water, and that she was struck by pieces of flying glass from the windows, which caused the injuries complained of.

She testified that she was treated aboard the vessel for her injuries and was subsequently treated ashore by her own physician, whose testimony was read, corroborating the existence of the injuries which she claimed, including a permanent scar on the wrist of her right hand.

It appears from the evidence that the waves had been increasing in size and that some of the waves had been striking the glass

windows and that water had been coming in around the edges of the windows. The plaintiff testified that she had made several trips and that nothing of this nature had happened on previous trips. The plaintiff contends that having been tacitly invited to sit on this deck, by virtue of the fact that the stewards of the vessel were serving tea to her, with thirty or forty other passengers, she was justified in remaining where she was. The plaintiff also contends that the officers of the vessel knew or should have known that with the increasing waves which were striking the glass windows a large wave might strike the windows, resulting in damage or injury to some of the passengers or their belongings, and it was the carrier's duty to give the passengers warning. Under the decisions plaintiff contends the failure to warn the plaintiff was negligence, and the matter should have been submitted to the jury.

The carrier is not liable for an accident caused by perils of the sea.

Counsel for plaintiff contends that in order for the carrier to escape liability for an injury claimed to have been caused by peril of the sea the burden is upon the carrier to prove that the injuries were in fact due to a peril of the sea. This, counsel for plaintiff contends, has not been done, as the defendant has introduced no evidence as to the cause of injury, and, therefore, cannot take any advantage of his exemptions from liability. The defendant maintains that the plaintiff's own testimony shows that her injuries were due to a high sea breaking over the vessel, and this of itself it believes demonstrates that the injuries were due to a peril of the sea. Certainly it cannot be contended that the seas or the weather were under the control of defendant. (*The Warren Adams*, 74 Fed. .413, 415.)

Miss Morgan's testimony, as paraphrased by her counsel, is " that from the time she first came on deck in the afternoon until the time of the accident the waves were breaking higher and that several waves had struck the windows, allowing water and spray to come in around the edges of the windows." Counsel for plaintiff contends that the conditions described constituted a menace to plaintiff's safety and that the defendant was negligent in failing to warn Miss Morgan of the danger. There is a reciprocal duty on the part of plaintiff which is coextensive with the duty, if any, of the defendant to warn her of the dangers of her position. That duty is that she shall exercise that degree of care which an ordinarily prudent person would use in a like situation.

In *The Tourist* (265 Fed. 700) the court said: " Carriers of passengers on the sea have a right to assume that passengers will exercise the care of reasonably prudent men. The libelant sat in a seat where he might have seen that his feet were within the range

of the gangplank, if it should swing to the full extent to which it might swing.   At the several landings he received a general warning to look out for the gangplank.   There is some testimony that he received special warnings, pointing out that his location was dangerous.   *Whether he had such warnings or not, he must be held to the exercise of his sight and of his common sense, even though he did not fully appreciate his danger.*   \* \* \*   There was nothing to prevent him from seeing what was happening directly before him He clearly had time to get out of the way.   The fact that he had not been injured the first time the gangplank was thrown over was no assurance to him that he might not be injured the second time; he must be held to the care of a reasonably prudent man. I cannot find that he was in the exercise of such care.   I must hold that the libelant himself was also at fault."   (p. 703.)

In *Elder Dempster Shipping Co.* v. *Pouppirt* (125 Fed. 732) a passenger was injured when a draft of timber was discharged over the side.   He had been watching this work proceed for some time from a position of safety, and later had moved in close proximity to the work gangs.   The court said: " The libelant, a man of more than ordinary intelligence and education, watched for some hours the operation of dismantling the structures on the ship.   He saw and understood the method used in throwing overboard the larger pieces of timber, and saw that when they struck the water the end in the water went aft, and the end on the vessel canted forward on the rail.   As he had full opportunity of seeing all this from his position on the bridge, he must have seen the precautions which the men at work took when the timber was pushed over the rail into the water.   He must also have seen and fully realized the danger attending these operations.   He was in a place of perfect safety on the bridge, and as the work was proceeding rapidly he could easily realize that the necessity for him to remain in this place of safety would soon cease.   He was not confined on the bridge.   He could move about upon it and take a moderate degree of exercise on it.   The bridge was seven or eight feet wide and the whole width of the ship in length.   After observing for nearly a whole day what was done and how it was done by the men at work, he left the bridge, and went down to the scene of operations.   On both sides of the deck gangs of men were tearing down and moving parts of the structures and putting them overboard.   He went in close proximity to them.   If he did not closely observe them, and keep his attention alive so as to take precautions when threatened with danger, it was his own neglect for not doing so.   The gangs of men were at the same work which he had seen them at all that day.   Why did he go there?   He knew that on the bridge he was

safe.  He could not avoid knowing that on the *Montenegro*, where the work was going on, he was in more or less danger.  There certainly was no necessity for him to go down upon this deck.  He did it voluntarily.  If he went there from curiosity, or to take exercise, or from any other motive, he was using his right as a reasonable being, but at the same time he assumed the risk.  He could only have been prevented from doing that which he did by being shown the danger, which was unnecessary, as he could himself see it without being told, or by being forcibly arrested, carried back to the cabin, and confined there — a doubtful proceeding with regard to one not one of the crew."   (pp. 738, 739.)

In *The Empress of Scotland* (11 F. [2d] 783) a passenger sustained injuries while attempting to board a tender which was to take him from the ship to shore.  Owing to the motion of the water the tender bobbed up and down, and the passenger missed his footing as he stepped to the gunwale.  It was contended on behalf of the passenger that the ship's officers were negligent in permitting passengers to go ashore under the existing conditions of the weather.  As to this the court said: " He [the passenger] had decided to go ashore as many of the other passengers had done; he knew as well as anyone that the tender was rolling, for he had been observing it as he stood on deck, and while those ahead of him were boarding her.  This was not his first experience around the water.  He could not fail to have realized that there was some risk, though not a very great one, for an able-bodied man, and the inference is that whatever injury he received must have been due to his own lack of care in watching the gunwale of the tender while he was about to step over.  In *Goode* v. *Oceanic Steam Nav. Co.* (251 Fed. 556; 163 C. C. A. 550) the Circuit Court indicated that it was not negligence if the seaman or the first officer, as in the present case, took the usual course with persons who were apparently strong and able to take care of themselves.  Carriers of passengers have the right to assume that passengers will exercise the care of a reasonably prudent man (*The Tourist* [D. C.] 265 Fed. 700).  The obligation to warn applies to a danger unknown to the passenger.  (*Tietz* v. *International Railway Co.*, 78 N. E. 1083; 186 N. Y. 347; 10 L. R. A. [N. S.] 357; 9 Ann. Cas. 1020.)  The question involved in the case at bar is similar to the one in *The Anglo-Norman* (Fed. Cas. No. 393), where it was held that where a passenger voluntarily encounters ' a seen danger,' and receives an injury in consequence of his own carelessness or awkwardness, he cannot recover.  (See, also, *Elder Dempster Shipping Co., Ltd.*, v. *Pouppirt*, 125 Fed. 732; 60 C. C. A. 500, reversing [D. C.] 122 Fed. 983.) "

Miss Morgan, as her testimony shows, is a person capable of intelligent observation, and furthermore was an experienced passenger on transatlantic vessels. The physical construction of the deck was obvious to her, and if the waves were steadily becoming higher, as she testified, she was fully conversant with the situation. The circumstances which Miss Morgan ·described any normal, intelligent person should have been able to interpret.

The duty on the part of a common carrier to warn a passenger of a situation of danger rests upon the theory that the danger may not be apparent by reason of circumstances which lie wholly within the knowledge of the carrier.

No such situation exists in this case. The existence of the conditions which plaintiff contends constituted a threat of danger lay as much in the plaintiff's observation as in that of the officers of the steamship. It needed only the exercise of ordinary powers of interpreting experience and a reasonable display of intelligence to draw the same conclusion which she contends the officers of the steamship should have drawn. If the situation was as bad as plaintiff claims she has shown that she failed to exercise the care which an ordinarily prudent person would have exercised under the circumstances, and she is, therefore, guilty of contributory negligence and cannot recover in this action.

In *Tietz* v. *International Railway Company* (186 N. Y. 347), in considering the duty of a common carrier to warn its passengers of the existence of danger, the court said: " While a passenger may properly assume that a conductor knows whether he can under the particular circumstances get on or off or move upon the train with safety (*Filer* v. *New York Central R. R. Co.*, 59 N. Y. 351), yet where it is plainly open to his observation that reliance upon the judgment of those placed in charge of a train will expose him to risk that a reasonably prudent man will not assume, the passenger is not justified in assuming the risk. (*Cincinnati, etc., R. R. Co.* v. *Carper*, 112 Ind. 26.) The cases in which negligence has been imputed to a railroad company for the failure of those in charge of the train to give proper warning to the passengers have been cases in which the passengers *were ignorant of the conditions which constituted the danger to which they were exposed.*" (pp. 351, 352.)

The defendant was bound to exercise only that degree of care and diligence which reasonably prudent and careful men would exercise under the circumstances.

It is well settled that common carriers are not insurers of the safety of their passengers, and in order to render them liable for damages it is essential to show that they have neglected the performance of some duty which in the exercise of reasonable care

and diligence and prudence they owe to such passengers. (*Palmer* v. *Pennsylvania Co.*, 111 N. Y. 488; *Palmer* v. *Delaware & Hudson Canal Co.*, 120 id. 170.) The degree of care demanded of a common carrier of passengers varies according to the circumstances of each case, and in the case of ocean carriers the degree of care owed to the passengers depends upon circumstances and conditions which are peculiar to ocean travel.

Negligence may not be assumed from the mere happening of an accident, but is for plaintiff to prove affirmatively negligence or circumstances making negligence a legitimate if not an irresistible inference. (*Scott* v. *N. Y. Central R. R. Co.*, 216 App. Div. 623; *Pennsylvania R. Co.* v. *McCaffrey*, 149 Fed. 404.)

The provisions of the contract of carriage which were introduced in evidence were not invalid and were properly admitted in evidence.

The plaintiff's argument with reference to the provisions of the ticket which were introduced in evidence seems to be based upon the theory that the ticket is of no binding force, as the ticket itself fails to constitute a contract between the parties except upon the showing that there was some additional consideration other than the passage authorized by the ticket and the amount paid therefor. Counsel for plaintiff cites and quotes extensively from *Murray* v. *Cunard Steamship Co.* (200 App. Div. 466). That case, plaintiff contends, is conclusive as to the invalidity of clause 3 of the passage ticket. This, however, is not the last expression of the law, for that same case was *reversed* by the Court of Appeals (235 N. Y. 162), the court saying: "The law is settled in this State that a ticket in this form, issued by a steamship company for a voyage across the ocean, is more than a mere token or voucher. It is a contract, creating the obligation and defining the terms of carriage * * *. This ticket, to the most casual observer, is as plainly a contract, burdened with all kinds of conditions, as if it were a bill of lading or a policy of insurance. ' No one who could read could glance at it without seeing that it undertook to prescribe the particulars which should govern the conduct of the parties until the passenger reached the port of destination ' (*Fonseca* v. *Cunard S. S. Co.*, 153 Mass. 553). In such circumstances, the act of acceptance gives rise to an implication of assent * * *." (pp. 165, 166.)

Plaintiff also contends that paragraph 9 of the passage ticket, which requires that the claim be delivered to the shipowner or agent within three days after the passenger shall have landed, is unreasonable and, therefore, invalid. Provisions of this character limiting the time in which the carrier shall be given notice of the claim are common in passage contracts, and the period within which

such notice is required to be given varies from thirty-six hours up.  In *American Grocery Co.* v. *Staten Island R. T. Co.* (23 Misc. 356) a limitation of thirty days after the landing or failure to deliver goods was held reasonable.  In the following cases the Federal courts upheld conditions in bills of lading providing for notice within times varying from thirty-six hours to thirty days: *The St. Hubert* (107 Fed. 727); *Angel* v. *Cunard S. S. Co.* (55 id. 1005).

Here again counsel for plaintiff relies upon *Murray* v. *Cunard Steamship Co.* (200 App. Div. 466) for authority for his contention that the short time limited in the passage ticket was unreasonable, and, therefore, invalid.  On appeal the Court of Appeals (235 N. Y. 162) said: " Exoneration, however, is not to be confused with regulation.  ' A stipulation for written notice within a reasonable time stands on a different footing, and of this there is no doubt ' (*Gooch* v. *Oregon Short Line R. R. Co.*, 258 U. S. 22).  There the contract called for notice within thirty days.  ' The plaintiff was in a hospital for about thirty days under the care of a doctor employed by the defendant, but was not disabled from giving the notice.'  The court enforced the contract.  ' Very probably,' it was said, ' an exception might be implied if the accident made notice within the time impracticable ' (*Gooch* v. *Oregon Short Line R. R. Co.*, supra).  There is no evidence that this plaintiff was physically or mentally unable to give notice of the injury (*Forsyth* v. *City of Oswego*, 191 N. Y. 441, 444; *Smith* v. *Village of Clifton Springs*, 233 N. Y. 591).  Even if we were to assume in his favor that there was incapacity for a time, with a resulting extension of the period for notice, he did not make a move within forty days thereafter.  Limitations of this kind have their justification in the need of some safeguard to protect the carrier against fraud.  Passengers on steamships scatter in all directions when the voyage is at an end.  If claims may be presented at any time within the term of years permitted by the Statute of Limitations, the opportunity for investigation will often be lost beyond recall.  ' The practice of fraud is too common to be ignored ' (*Gooch* v. *Oregon Short Line R. R. Co.*, supra)."

It appears from the testimony that the accident was due to a peril of the sea and plaintiff's contributory negligence, as a matter of law, being cognizant of the heavy sea and high waves, in remaining in a position of danger and failing to act as an ordinarily prudent person should act under the circumstances.

Motion for new trial denied.

Submit order.