NORTHERN COMMERCIAL CO. v. NESTOR.

(Circuit Court of Appeals, Ninth Circuit. May 22, 1905.)

No. 1,071.

1. SHIPPING—CARRIERS OF PASSENGERS—DUTY TO PROTECT FROM INJURY.

A carrier of passengers by water is bound to exercise the utmost vigilance and care in maintaining order on its vessel and to protect its passengers against injury by the careless use of firearms or other violence from whatever source arising, which could reasonably have been anticipated in view of all the existing circumstances and the number and character of the persons on board; and where the officers permitted

passengers to discharge firearms on board in a reckless manner the owner is liable to a passenger injured thereby without his fault or negligence.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 538, 544.]

2. DAMAGES—PERSONAL INJURY—INSTRUCTION.
The charge of the court as to the measure of damages recoverable in an action for a personal injury considered and approved.

3. SHIPPING—INJURY OF PASSENGER—DUTY OF SHIP TO GIVE MEDICAL CARE.
A passenger on a vessel, injured, while on a voyage, without his fault, through the negligence of the officers, is entitled to no less care from the ship than a seaman, and its duty is not fulfilled by giving him such care as an ordinary unskilled person could afford him.

In Error to the District Court of the United States for the Second Division of the District of Alaska.

The defendant in error was plaintiff below in this action, which was brought to recover from the plaintiff in error (defendant below) $50,600 as damages growing out of the wounding of the plaintiff to the action while a passenger on the defendant's steamer Sadie on one of her trips between Nome and Keewalik, in the District of Alaska, the complaint alleging that on June 29, 1902, the defendant received the plaintiff on board its steamer in the roadstead off Nome, for the purpose of safely carrying him as a passenger from Nome to Keewalik for the first-class fare of $30, paid to the defendant by the plaintiff therefor; that the defendant, its servants, agents, and employés, so negligently, carelessly, and unskillfully operated and managed the steamer on the trip that divers passengers (other than the plaintiff) and employés were allowed and permitted to and did fire off guns and firearms at random on the steamer, and that, notwithstanding the apparent danger from such reckless shooting, the defendant, by and through its servants and employés, negligently permitted the same and participated therein, and so misbehaved in the management of the steamer that through its negligence and carelessness the plaintiff, without any negligence or carelessness on his part, and while using ordinary care to avoid the danger of such firearms, was, on July 1, 1902, shot through the left leg, near the ankle, by a bullet from one of the guns discharged on board the steamer in the hands of one of the said persons aboard; that the defendant negligently and carelessly allowed the plaintiff to remain on the steamer without medical or surgical aid or attention for several days thereafter, and upon returning to the port of Nome from the trip to Keewalik the defendant negligently kept the plaintiff on the steamer for two days before removing him to the shore, where he procured medical and surgical aid and attention; that, owing to the injuries so received, and in consequence of the defendant's neglect of him, the plaintiff was made sick, lame, and permanently disabled; that the bones of his left leg were shattered and weakened, thereby causing him great bodily pain and mental anguish, and permanently impairing and disfiguring him; that by reason of said injuries the plaintiff suffered the loss of his time from his business, and continued to be unable to attend to his business in the future; that in consequence of such injuries the plaintiff was compelled to and did expend $50 for medicine, $250 for medical and surgical aid, and $300 for hospital treatment and nursing, and will be compelled to expend in the future other moneys for medicine, medical and hospital treatment and nursing. By reason of all which the plaintiff has been damaged in the further sum of $50,000. The defendant, by its answer, admitted that it was the owner of the steamer Sadie, and a carrier of passengers for hire between Nome and Keewalik, and that the plaintiff was a passenger on the steamer at the time of his injury; but put in issue the other material averments of the complaint. The case was tried with a jury, which returned a verdict in the plaintiff's favor for $4,600, upon which judgment was entered against the defendant corporation. The case is brought here by it.

Thomas, Gerstle & Frick, Charles S. Johnson, and A. J. Daly, for plaintiff in error.

William A. Gilmore, James E. Fenton, and T. M. Reed, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended on the part of the plaintiff in error that the court below should have instructed the jury to return a verdict in its favor. The refusal of the court to do so was, in our opinion, clearly right. The evidence showed without conflict that the defendant in error was at the time that he was shot sitting on the upper deck of the steamer, near the captain's cabin, reading. There was testimony going to show that on the day of the accident—which was July 1, 1902—as well as the day before there had been much shooting by the passengers and others on board, with pistols, guns, and rifles, some of them running from one side of the boat to the other with their weapons, and there was testimony tending to show that during the time such shooting was going on the rifle with which the defendant in error was shot had been carelessly left loaded on some grating on the deck of the steamer by a passenger called "The Lucky Swede," after which it was picked up by a man named Quinn, who handled it so recklessly as to shoot the defendant in error, inflicting upon him a painful and serious injury. The case further shows that several of the passengers—the defendant in error among them—had complained to the master of the vessel of the danger of such use and handling of the firearms on board, the defendant in error testifying, among other things, as follows:

"The shooting began in the morning, and continued off and on through the day, away along until midnight of June 30th, after midnight. I saw the 'Lucky Swede' and saw Mr. Donahue and Frank Harker shooting. There were several others. A rifle, double-barrel hammerless shotgun, and several revolvers were used that day. A passenger on board by the name of Frank Harker was using the double-barrel shotgun. On June 30th, a great number of shots were fired. I had a conversation with the captain on June 30th. The captain was on the pilot house, walking back and forth. It was in the morning some time. There had been shooting. I asked the captain to not allow that reckless shooting, and people running across the boat with his gun; that somebody was liable to be hurt. I do not recollect what the captain said, but it was to the effect that guns were allowed on the boat. There was shooting prior to my conversation."

In the testimony of the witness Riese that witness said, among other things:

"I saw Mr. Quinn handling that gun on the morning of June 30th. I don't know whether he was shooting it or not. I mean the twenty-two rifle. He was handling it just a little aft of the paddle wheels—between there and the stern of the boat. I could not be positive whether he handled the gun on the first day or not. I know he did on the second. That was the next day after we left Nome, the 30th of June. On the morning of the 1st day of July he was on the aft part of the boat, and he wanted this little rifle. He was handling this rifle, but he was too reckless with it, that I took it away from him, and gave it to some one else. I forget now who it was. I

138 F.—25

had a conversation with the captain of the Sadie prior to the time Mr. Nestor was shot. He was standing at the corner of the pilot house, on the left-hand side, and looking towards the forward end of the boat. I had this conversation on the 1st day of July, a little while before lunch, about eleven o'clock a. m."

The witness being asked to state that conversation, the question was objected to, and, the objection being overruled, he answered:

"I went to the captain, and told him that I did not think it right to allow people to handle guns on board the steamer in such a careless manner; that it endangers the lives of our fellow passengers. I don't just exactly remember now what the captain did say. He made some kind of a sharp remark to me, as much as to say that he was running the ship, or something to that effect. I didn't get any satisfaction from him. After I conversed with the captain, he did not take any steps to stop the shooting. There was shooting after that."

On cross-examination this witness testified:

"I went once to the captain. I am positive that was on July 1st, and not on June 30th. I remember the incident that occurred at that time because it was the day that this man Quinn handled the gun in such a reckless manner, and this incident occurred shortly afterward. I guess I did make the answer to the question in the taking of my deposition, 'When was it you spoke to the captain?' the answer, 'It was the first morning out after we left here;' and in answer to the question, 'About what time; do you remember?' I guess I did make the answer, 'It was about nine or ten o'clock in the morning.'"

It is surprising, in view of such testimony, to find it seriously contended that the court should have taken the case from the jury by directing a verdict for the defendant. The defendant was bound to exercise the utmost vigilance and care in maintaining order and guarding its passengers against the negligent and careless use of firearms and other violence, from whatever source arising, which might reasonably have been anticipated, or naturally expected to occur, in view of all the existing circumstances, and of the number and character of the persons on board. Flint v. Norwich, etc., Trans. Co., 34 Conn. 554, Fed. Cas. No. 4,873; Norwich & N. Y. Transp. Co. v. Flint, 13 Wall. 3, 20 L. Ed. 556; West Memphis. Packet Co. v. White, 99 Tenn. 256, 41 S. W. 583, 38 L. R. A. 427. The charge of the court below, taken as a whole, was in substantial accord with this rule. It is not, as has been often decided, permissible to take and consider isolated sentences of a charge, regardless of their context. We are of opinion that the charge of the court below covered the law applicable to the case (except in respect to an omission, favorable to the plaintiff in error, hereinafter noticed), and that there was therefore no prejudicial error in refusing such of the plaintiff in error's instructions as stated the law correctly.

It is urged on behalf of the plaintiff in error that the jury was not properly instructed in regard to the assessment of damages. This is the instruction given by the court on that subject:

"I further instruct you that if you find from a preponderance of the evidence all of the issues in this case in favor of the plaintiff, and that he is entitled to recover, the measure of his recovery should be limited strictly to what is termed 'compensatory damages,' not exceeding the sum of fifty thousand six hundred dollars. In assessing such damages the jury may consider the award: (1) Such sum as will compensate him for the reason-

able value of the services for medical attendance, for medicines, nursing and hospital fees paid or incurred, if any such expenses have been proven, in attempting to effect a cure, and for nursing him during the period that he was disabled by his injury. (2) The value of his time during the period that he was disabled by such injury, if it has been shown by the evidence. (3) If the injury is of a permanent nature, and has impaired the plaintiff's power to earn money in the future, such sum as will compensate him for such loss of power. And, finally, the jury may consider the pain and suffering, both mental and physical, to which plaintiff has been subjected, if any; the loss of time and loss of wages which has resulted from his injury, if any; the nature and extent of his physical injuries; the effect upon his ability to earn his living since the injury occurred, as compared with his ability to do so before; and the probable effect of those injuries upon his future health and strength. Under all these circumstances, and in view of all these facts, if you find plaintiff is entitled to recover, you should award him such damages as you, in your dispassionate judgment, believe will be a reasonable and just compensation for the injuries, if any, he has sustained, not exceeding the sum of fifty thousand six hundred dollars."

The first objection made to these instructions is that the jury was first directed to take into account the value of the plaintiff's time during the period he was disabled by the injury, and was again told to consider the loss of wages sustained by the injury; that this was authorizing a double recovery for the same thing. We do not think the jury could have been misled in the particular indicated by the instructions given. The plaintiff in error had testified to the amount of wages he was accustomed to receive, and the value of his time was therefore the amount of the wages, which was evidently what the court meant, and what the jury must have understood by the instructions in question.

It is also contended on the part of the plaintiff in error that there was no testimony tending to show that the plaintiff's power to earn money was lessened by the accident, and therefore that the instructions in respect to damages were erroneous. But we think the testimony of the plaintiff himself and of the witness Dr. Rininger constituted a sufficient basis for the giving of the instruction complained of.

Another objection, contained in the ninety-second and ninety-third assignments of error, is that the court erred in refusing to charge the jury that, if it should be found that the defendant attended the plaintiff after he was shot with the reasonable care that an ordinary person would have bestowed upon him under the circumstances, they should return a verdict for the defendant. Such would not have been the degree of care required of the defendant towards one of the members of its crew. The Iroquois, 194 U. S. 240, 24 Sup. Ct. 640, 48 L. Ed. 955; Id., 118 Fed. 1003, 55 C. C. A. 497; The Troop, 128 Fed. 856, 63 C. C. A. 584; Whitney v. Olsen, 108 Fed. 292, 47 C. C. A. 331. Certainly a passenger is entitled to none the less care. Although one of the alleged grounds of the plaintiff's action was the defendant's neglect of him after he was wounded, and although the plaintiff's testimony tended to show such neglect, yet the attention of the jury was not called to that phase of the case in the instructions that were given. This, manifestly, was in favor of the defendant to the action, and not to its prejudice.

The judgment is affirmed, subject to the stipulation of the respective parties to the suit filed in this court, agreeing that the judgment shall not bear interest after April 1, 1905.