BOSTON & YARMOUTH S. S. CO., Ltd., v. FRANCIS.

(Circuit Court of Appeals, First Circuit. March 6, 1918.)

No. 1326.

SHIPPING ☞166(1)—LIABILITY OF VESSELS—INJURY TO PASSENGER.

A verdict finding defendant steamship company liable for an injury to plaintiff, a passenger, by being thrown from a settee in the cabin on which she was sleeping, *held* supported by the evidence, from which it appeared that the vessel had just passed from the shelter of the land into rough water, that there was a drop leaf in the front of the settee, which could be hooked up to prevent persons lying thereon from being thrown out, and that there was a stewardess employed to look after the safety of lady passengers, and whose duty it was to hook up such leaves when passengers were lying on the settee in rough weather, but that she did not see plaintiff, and did not raise the leaf.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action at law by Ida Francis against the Boston & Yarmouth Steamship Company, Limited. Judgment for plaintiff, and defendant brings error. Affirmed.

C. C. Barton, Jr., of Boston, Mass. (Barton & Harding, of Boston, Mass., on the brief), for plaintiff in error.

Wendell P. Murray, of Boston, Mass. (William J. Williams, of Boston, Mass., on the brief), for defendant in error.

Before DODGE, BINGHAM, and JOHNSON, Circuit Judges.

DODGE, Circuit Judge. The plaintiff in error (hereinafter called defendant) seeks to reverse a judgment in the District Court in favor

of the defendant in error (hereinafter called plaintiff) for damages for personal injuries sustained by her while a passenger on the defendant's steamer Boston, during a voyage from Boston to Yarmouth, Nova Scotia.

According to the undisputed evidence, her injuries were occasioned by being rolled or pitched, in rough water encountered after passing Cape Ann, from a settee in the cabin to the cabin floor. Upon this settee she had lain down and gone to sleep, partly dressed, some hours before. Not including the cushion upon it at the time, the settee was 14½ inches above the cabin floor. It was provided with a leaf on the side from which she fell, so arranged as to hang down in front when not in use, but capable of being raised and made fast with a hook and eye for the purpose of protecting passengers who might occupy it as a bed from being rolled or pitched off. This leaf had not been so raised or made fast.

The jury found specially that the defendant was negligent in permitting the plaintiff to go to sleep on the settee without putting up the leaf, and also in not discovering that she was sleeping on the settee at the time of the accident, and in not warning her of the danger therefrom. The jury found also that the plaintiff did not fail to exercise ordinary care for her own safety. As to a claim made by her for the defendant's failure to provide reasonable medical attendance and treatment after the accident, the jury further found the defendant negligent in failing to furnish her with such attendance and treatment.

The only error assigned is the court's refusal to rule that on all the evidence the plaintiff was not entitled to recover under any count of her declaration. There was testimony from the only stewardess on duty during the voyage, called as a witness by the defendant, in view of which we are clearly unable to hold that there was no evidence upon which the defendant's negligence could be found to have caused the accident. The stewardess testified, among other things, that when the settees were used for berths the board was hooked up by her, "which protects people from falling out"; that "she would not have permitted the plaintiff to go to sleep on that settee if she had noticed her"; that it was "not safe for a person to go to sleep on that settee unless the side board is up and held by the hook in such stormy weather"; also that she was "down there every quarter of an hour," and her duties were to look after the ladies throughout the ship, including the cabin. The jury could have found from such testimony that it was the stewardess' duty to notice the plaintiff's situation and guard against danger to her, either by warning her off the settee or by putting up the board.

Nor can we hold—although the plaintiff testified that she had been a frequent passenger on the steamer, knew that there was such a leaf and what it was for, and that there were berths in the cabin which she might have occupied in which she would not have been exposed to any danger of being thrown out—that no other finding was reasonably possible than a finding that the plaintiff's own negligence contributed to her injury. The jury could have found that she was

justified in relying on the stewardess to look after her safety by putting up the leaf, or by warning her of the danger in remaining on the settee without having it put up.

There was also testimony from the chief officer of the Boston from which negligence on the defendant's part in another respect might have been found. According to his testimony the wind was from the northwest, gradually increasing in violence during the voyage, and while the vessel was more or less protected from it, and the heavy sea raised by it, so long as she was under the lee of Cape Ann, she received their full force, after passing the cape, against her port quarter, being that part of her in which the ladies' cabin was situated. The jury might have regarded this as a change in conditions which the officers of the vessel ought to have anticipated, while the plaintiff could not reasonably have been expected to do so, and might have found that due care on their part required seasonable notice from them to the stewardess, to see that all occupants of berths or settees in the cabin were made secure.

The plaintiff testified that her arm or wrist was broken by her fall. The defendant's chief steward and the stewardess above mentioned testified that after examining her they found nothing to indicate that any bones were broken. Except by them, it did not appear that any measures for her relief were taken on the defendant's behalf, and as to what was done by them the evidence was conflicting. No physician was on board, and although, according to the chief steward, the company had at command the services of a doctor in Yarmouth, who could get there in about five minutes, and whom they had frequent occasion to call, no attempt appeared to have been made, after the boat's arrival at 8:15 a. m., to obtain medical aid for her, although the train for Digby, to which she went from the boat, did not leave the wharf until 9:40 a. m.

The evidence on the plaintiff's behalf tended to show that she asked that before she left the boat a doctor be sent for. This the stewardess and the chief steward denied. If, upon this or other disputed points bearing upon her treatment after the accident, the plaintiff's testimony was believed as against that tending to contradict it, the jury could have found that she did not receive that degree of care and attention which her injuries demanded, so far as was reasonably practicable for the defendant to afford it with such facilities as were at its employés' command.

The judgment of the District Court is affirmed, with interest, and the defendant in error recovers her costs of appeal.