GOODE v. OCEANIC STEAM NAV. CO., Limited.

(Circuit Court of Appeals, Second Circuit. April 10, 1918.)

No. 183.

1. APPEAL AND ERROR ☞1008(1)—REVIEW—FINDINGS.
   A finding of the trial court as to the size and age of a seaman, who testified at the hearing on a libel in personam for personal injuries, will be deferred to on appeal.

2. SHIPPING ☞166(1)—PASSENGERS—NEGLIGENCE.
   Where a woman passenger fell in stepping from the platform of a ship's companionway into a lifeboat, though both the ship and boat were practically motionless, *held*, that failure to place a seaman in the boat, or to provide the platform with devices to be grasped, was not negligence; nor was it negligence for a seaman, who steadied the passenger when she began the step, to let go before she placed her foot on the thwart of the lifeboat.

3. SHIPPING ☞166(1)—PASSENGERS—CARE.
   If a woman passenger, whose appearance did not indicate that she was unable to control her balance as a normal person, desired extra assistance in stepping from a companionway of a ship into a lifeboat, the ship and boat being practically motionless, she should request additional assistance.

   Rogers, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by Mabel E. Goode against the Oceanic Steam Navigation Company, Limited. From a decree for respondent, libelant appeals. Affirmed.

Appeal from a decree of the District Court for the Southern District of New York (Hough, C. J., presiding), dismissing a libel in personam. The libel was filed November 6, 1916, to recover for personal injuries suffered on board the respondent's ship Laurentic on January 13, 1913, while in the harbor of Havana. The libelant was a passenger on board the Laurentic on a pleasure trip in the West Indies. The vessel had stopped in the harbor of Havana, and the passengers were offered an opportunity to make what was known as the New Castle trip, going ashore in lifeboats towed by a launch. A companionway was put over the starboard side of the Laurentic running aft, at the base of which was a platform some 2½ or 3 feet square, on each side of which there was a rope, except at an open side leading to the lifeboat. The lifeboat was held by one man on either end close up to the side of the platform. Some question is made whether the gunwale, 3 or 4 inches wide, was on a level with the platform or a few inches higher. The passengers stepped from the platform onto the seat or thwart of the lifeboat, which was 12 or 15 inches wide and about 6 inches below the level of the gunwale. At the bottom of the boat there were thwartship ribs.

Before the plaintiff, who was in the company of her husband, came down the companionway, about 25 people had already seated themselves in the boat, which was stiff; there being little or no motion in the harbor on that day. Havana is a nearly land-locked harbor, with a rise and fall of the tide of less than one foot. On either side of the platform stood two seamen of the ship, whose age and size is in some dispute. As the libelant, who came down the companionway, turned to her left and was about to step from the platform into the lifeboat, the seaman on her right took her under the arm to assist her in her step. She lifted up her foot and was about to step down when the seaman, supposing that she was already in safety, withdrew his hand and she lost her balance. Her foot slipped upon the thwart and

she fell into the bottom of the boat, a distance of some inches, spraining her ankle upon one of the ribs, and causing the injuries in question. The platform itself was supported from the ship by a chain and bridle to support either side. There were iron uprights or stanchions 3½ to 4 feet high on either end, within reach of the libelant as she took the step. At the time she was a woman in good health, 40 years old, and weighing about 170 pounds.

The charges of fault are in failing to provide upon the platform a rope or other contrivance by which the libelant could assist herself in stepping into the lifeboat, in not providing a man in the lifeboat, and in stationing a person of insufficient strength to help her down, who carelessly let go his hold of her when she was in the act of stepping.

Abbott & Coyne, of New York City (B. B. Coyne, of New York City, of counsel), for appellant.

Burlingham, Montgomery & Beecher, of New York City (Morton L. Fearey, of New York City, of counsel), for appellee.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). We see no possible ground for negligence in this case, unless it be the act of Reilly, the seaman who helped the libelant into the boat. There was certainly no reason to have a seaman in the boat itself. The passengers were none of them decrepit or infirm; the step was an easy one, at most only 6 inches deep; the lifeboat had no motion, or substantially none; the libelant was a woman in the prime of life and vigor, apparently in no need of assistance. We cannot see that such a situation required more than the two men who were to help the passengers into the lifeboat. The situation is quite different from that of a boat in motion alongside a steamer.

[1] We accept the opinion of the District Judge that the person who helped the libelant in was Reilly, a seaman 30 years old, weighing about 170 pounds. He saw Reilly and the libelant, and his judgment is better than ours as to which is correct as to the identity of this seaman, and whether he was a young boy 16 years old or not. It is true that the District Judge tried the case in part upon depositions, but we cannot agree with the libelant's position that for that reason the finding as to those witnesses whom he did see was not better than ours can be, who have only the written depositions as to all.

[2, 3] It is substantially conceded that the cause of the libelant's misstep was Reilly's failure to keep hold of her until her foot had actually reached the thwart, or until she had become firmly planted. But this does not seem to us sufficient evidence of negligence. The case turns precisely upon the question whether Reilly should have apprehended that the libelant would rely upon his support for so long as she in fact did. It seems to us in common experience that, in steadying a woman who is making a step under these circumstances, one does not ordinarily keep the support until her foot actually reaches the lower step, particularly where the step, as here, was only 6 inches, no more than, if as much as, the ordinary riser of a staircase. The purpose is to insure the balance of the person assisted until the weight of the body has begun to leave the leg which remains on the

higher step and has begun to fall, so as to be caught by the lower foot. Only in the case of decrepit persons, whose balance in landing is doubtful, do we think it necessary that the support should be kept until the foot has been steadied upon the lower step. We agree with the District Court that Reilly took the usual course with persons who are apparently strong and able to take care of themselves. There is no suggestion in the record that the libelant in appearance was unwieldy or incapable of managing her weight. It is true this was considerably above the average, but that did not indicate that she could not control her balance as normal people ordinarily do. We think that, if her control was not that of the ordinary person, it was incumbent upon her to ask for the extra assistance, which was not otherwise indicated.

Finding no negligence, the decree will be affirmed, with costs.

ROGERS, Circuit Judge. I dissent. I agree that the only possible ground for negligence is in the act of Reilly, a seaman, employed by the defendant and stationed by it to help the libelant into the boat. The majority opinion concedes that the cause of the injury was Reilly's failure to keep hold of the libelant until her foot had become firmly planted on the thwart or seat of the boat. In that I also concur. But I am not able to agree that Reilly was not guilty of negligence in withdrawing his assistance before the woman securely established in the boat. If he had not undertaken to render any assistance, the libelant might have gotten along very well. But when he undertook to render assistance, he was under obligations not to withdraw it until she was safely within the boat.

In Hanlon v. Central R. R. Co. of New Jersey, 187 N. Y. 73, 79 N. E. 846, 10 L. R. A. (N. S.) 411, 116 Am. St. Rep. 591, 10 Ann. Cas. 366, the facts were somewhat analogous to the case at bar. The plaintiff was a passenger on the defendant's railroad, had arrived at her destination, and while stepping from the car to the station platform was injured by falling to the ground. As she was in the act of descending the car steps, the train conductor reached out his hand to help her, taking her arm by the elbow. Before she had placed her foot on the platform he withdrew the support of his hand, and she fell between the platform and the car. She obtained a verdict, which the Court of Appeals unanimously affirmed. The opinion, which was written by Judge Gray, states that:

"It [the railroad company] was not bound to furnish her any personal assistance in leaving the car; for she was, so far as the case shows, in the possession of her faculties and of good health, and was capable of moving about alone. There was nothing defective about the car platform or steps. The conductor of the train stood there, however, and voluntarily undertook to guide and to support her in descending from the car. * * * I think we must reach the conclusion that, while the defendant was under no obligation to supply the aid of a servant in assisting the plaintiff to descend from the car, yet, as the conductor undertook to do so, she had the right to rely upon that official's careful performance of his undertaking, and to hold the defendant responsible for any failure on his part to use reasonable care."

The case at bar is a much stronger case than the one before the New York Court of Appeals, for certainly it was a much less hazardous enterprise for a woman to alight from the steps of a railroad car to the station platform than for her to descend from a steamship into a lifeboat, the gunwale of which was a couple of inches above the platform. The lifeboat is described as big and wide and having seats on which four men could sit. The passengers were to be taken ashore in lifeboats; the boats being in the harbor of Havana and more or less disturbed by the ordinary roll of the sea. I am unable to distinguish this case in principle from the New York case, and so I am of the opinion that the decree appealed from should be reversed, and the cause remanded, with instructions to enter a decree in favor of the libelant for such damages as this court should determine she is entitled to upon the record.