## MOSES et al. v. COMPAGNIE GENERALE TRANSATLANTIQUE.

### No. 14461.

District Court, E. D. New York.
June 19, 1936.

Archibald C. Matteson, of Providence, R. I., and Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson, of New York City, of counsel), for libelants.

Haight, Griffin, Deming & Gardner, of New York City (Herbert K. Stockton, of New York City, of counsel), for respondent.

CAMPBELL, District Judge.

At all the times hereinafter mentioned and at the time of the trial the libelant, Frederick T. Moses, and his wife, Lillian F. Moses, in whose behalf the libel was also filed, were citizens and residents of Providence, R. I., in the United States of America, and respondent Compagnie Generale Transatlantique was a registered company and/or corporation organized and existing under the laws of the Republic of France.

Such corporation has no office nor officer within this District, but has from time to time property within this District, consisting of vessels owned by said Compagnie General Transatlantique, among others the motorship Lafayette, a vessel of French registry, and employed on the route between New York and ports in England and France.

On March 2, 1934, the said libelants engaged passage from New York to Plymouth, England, to go as passengers on motorship Lafayette, and as occupants of stateroom 157, on the starboard side of A deck of said motorship and paid to the respondent the required consideration for such passage. The said motorship Lafayette sailed from New York on March 11, 1934, with said libelants on board.

After one day at sea the wind blew a strong westerly gale, which was from a direction nearly astern as the vessel proceeded toward England so that the air in said vessel became very close, hot, and stuffy, and the portholes of the staterooms on A deck were opened by the room stewards and permitted to be open day and night, for four days and nights, after the departure from New York.

On March 15, 1934, the barometer began to fall, the wind was backing, and a swell was beginning, and there was every indication of the beginning of a bad storm.

March 16, 1934, opened with heavy weather, wind from W. N. W. strength 7 on Beaufort scale, high sea, ship rolling and pitching and good visibility. The wind continued very high during the day, its strength being 7, 6, 7, and 9. This was on the old Beaufort scale, the highest strength being 10. The barometer continued to fall, the wind and sea to rise until it became a very high sea, and the ship to roll greatly.

Pursuant to orders from the bridge conveyed through the highly organized and efficient service of security on the Lafayette, the room steward closed the porthole in libelant's room, or saw that it was closed. Neither libelant was in their room at the time. The libelants went down to their room to dress, and at about 8 o'clock p. m. went to dinner. After dinner they amused themselves in the public room of the ship and danced. The night steward coming on duty about 10 o'clock p. m. checked up on the porthole in libelant's room, and saw that it was closed and fastened tight. Neither of the libelants was in the room at that time. The libelants did not return to their room until about midnight. The storm had continued, the wind and the waves being high and increasing, and the ship rolling heavily. Both libelants were familiar with the ways of the sea, having taken various sea trips in steamers and sailing frequently in small vessels during the yachting season, and the libelant Frederick T. Moses was an experienced yachtsman, who was always skipper of his own boat. He was familiar with high winds and high seas, and capable of judging those conditions then prevailing when they returned to their room about midnight, as aforesaid, but in the face of all that, just before he retired, the said Frederick T. Moses, in the exercise solely of his own judgment, opened the porthole which had been securely closed by the steward. The storm continued to rage and about 1:30 o'clock a. m. on March 17, 1934, a tremendous sea broke over the vessel from astern breaking about fifty windows on both sides of the promenade deck and pouring into libelant's room through the porthole which the libelant Frederick T. Moses left open. He at once attempted to close the porthole, he had opened, and in

so doing loosened the pivoted portlight, whereupon the violent motion of the vessel swung the pivoted glass against his arm and he suffered a compound fracture. The entrance of the water into their room damaged the clothing of both of the libelants. The force of the storm was so great, and the discomfort of the passengers so evident, that about ten minutes thereafter the master of the vessel, believing it necessary or advisable to bring the ship about with her bow into the wind, rounded to very gradually to port and she rode easier the moment she was turned from her course.

The theory on which this suit was tried differs greatly from that of the letter of September 6, 1934, written by libelant's proctor to the respondent, and from the cause of action alleged in the third paragraph of the libel filed December 20, 1934 as follows: "Third: That at about 1.30 A. M. on Saturday, March 17th, those in charge of the navigation of the 'Lafayette,' without any warning to the passengers, suddenly brought the vessel about, head to the wind, without first passing the word to close all portholes on the side of the vessel which would be washed in consequence of such a maneuver, and without first satisfying themselves that such an order, if given, had been obeyed in the case of each porthole," and it specified the respondent's faults as follows:

"Sixth: That the respondent has been negligent in the following particulars:

"1. In failing to notify the occupants of all of the state-rooms on the starboard side of the ship, including your libelant, that the ship was to be brought head to the wind by turning her toward said side.

"2. In failing to notify the occupants of all state-rooms, on the starboard side, including your libelant, to close the portholes of such staterooms in anticipation of such maneuver.

"3. In failing to await a report back to the bridge that the vessel was secure in all respects for the turning contemplated before attempting it.

"4. In not having an X-ray instrument on board said vessel as part of its surgical equipment."

There was no mention of the last point on the trial, and it is clearly shown that the ship was not hove to until after the water entered libelant's room, and the arm of the libelant Frederick T. Moses was broken.

The ship was tight, staunch, strong, and in all respects seaworthy and properly man-ned and equipped. The port light in the porthole in question was in good working order. The order to close A deck portholes was at 6 o'clock p. m. on March 16th properly given, properly executed, and its execution verified at 10 o'clock p. m. by the night steward. In the face of all this, the libelants contend that the carrier was negligent in not seeking out the libelants, while dancing, dining, or otherwise amusing themselves somewhere in the social halls, or in failing to wait around and tell them on their return to their room about midnight, that their porthole had been closed by orders from the bridge and they should not open it, or in failing to affix a notice to the porthole or leave a note in a conspicuous place giving that information.

No such standard of care for the safety of the passengers, as that suggested by the libelants, was admitted by the officers of the ship, and Silverman v. Bermuda & West Indies Steamship Company Ltd. (C.C.A.) 74 F.(2d) 683, cited on behalf of the libelants is not in point. In that case the chairs had been lashed, but not securely, and, if they were lashed at all, they should have been well lashed, while in the instant suit the porthole had been securely closed by the steward, and deliberately opened by the libelant Frederick T. Moses.

Granted that the care required on the part of the ship includes the warning of passengers against perils not obvious to the passenger, the following cases cited on behalf of the libelants are not in point, as the libelants, especially the libelant Frederick T. Moses, were sufficiently familiar with the sea to understand the danger and should have left the porthole closed as it was by the steward. Boston & Yarmouth S. S. Co. Ltd. v. Francis (C.C.A.) 249 F. 450; The Annie L. Vansciver (D.C.) 161 F. 640; Compagnie Generale Transatlantique v. Bump (C.C.A.) 234 F. 52; The Korea Maru (C.C.A.) 254 F. 397.

There was no want of due care on the part of the ship's personnel, and warning was given by the closing of the porthole, and the case of The Arabic (D.C.) 34 F.(2d) 559, affirmed (C.C.A.) 50 F.(2d) 96, cited on behalf of the libelants is not in point, as in that case the court found that there was negligence in navigation and in failing to give proper warnings to passengers.

What it is claimed on behalf of the libelants was the duty of the ship, seems to me to be unreasonable on all the facts in this case. We are dealing with human beings,

200

and whatever the warning, and however personal, the ship could not prevent its passengers from opening portholes during a storm like that on the day and night in question; this is shown by the action of the male occupant of the next room, who, in the face of personal warning by the steward against such action, partly opened the porthole in that room into which entered water from the same wave; as was said by Judge Hough in Savage v. New York, N. & H. S. S. Co. (C.C.A.) 185 F. 778, 780: "It is not enough to make out a case of negligence to suggest that additional precautions would have prevented the accident."

Accepting as the standard of care required, "a very high measure indeed," as stated in Maibrunn v. Hamburg-American S. S. Co. (C.C.A.) 77 F.(2d) 304, I cannot believe that it was the duty of the ship, under all the circumstances, to seek out the libelants wherever they might be on the ship, or to give them written notice. The closing of the porthole by the steward was sufficient. No damage would have been suffered by the libelants, but for the fact that the libelant, Frederick T. Moses, substituted his will and judgment for that of the ship officers under conditions which it seems to me gave, to a man of his experience, sufficient notice of a danger, which was as apparent to him as to the ship's officers.

The damages suffered by libelants were caused by a peril of the sea. The Warren Adams (C.C.A.) 74 F. 413, 415; Stiles v. Munson S. S. Line (D.C.) 40 F.(2d) 276, 277.

Perils of the sea constituted an exception; see passenger ticket which provides as follows: "7.—Neither the Company nor the ship is liable for loss or of injury or damage to the passenger or to his property, his baggage or effects, occasioned by accidents, fires, explosion, perils of the sea, or unforeseen circumstances, or by barratry, fault or negligence whatsoever of the Captain, Pilot, sailors or members of the crew or passengers."

The damages for which libelant seeks to recover were caused by a peril of the sea, and no recovery can be had against respondent without showing negligence on its part. The burden of proving such negligence rests upon the libelants. This subject was fully covered by me and authorities cited in Stiles v. Munson S. S. Lines, supra (D.C.) 40 F. (2d) 276, at page 277.

The libelants were bound to exercise reasonable care whether they had received special warning or not. The Tourist (D.C.) 265 F. 700; Theresa Morgan v. Oceanic Steam Navigation Co. Ltd., 130 Misc. 570, 224 N.Y.S. 420; Elder Dempster Shipping Co. Ltd. v. Pouppirt (C.C.A.) 125 F. 732; The Empress of Scotland (D.C.) 11 F.(2d) 783.

No negligence on the part of the respondent has been shown.

A decree may be entered in favor of the respondent against the libelants dismissing the libel with costs.

Settle decree on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Admiralty Rules (28 U.S.C.A. following section 723), submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the court, as provided by the Admiralty Rules of this Court.