**Harry L. MARSHALL, Jr., Appellant,**

v.

**WESTFAL–LARSEN & CO., General Steamship Company and Bjarne Sellevald, Appellees.**

**No. 15611.**

United States Court of Appeals
Ninth Circuit.

May 12, 1958.

Rehearing Denied June 14, 1958.

---

Erskine, Erskine & Tulley, Morse Erskine, San Francisco, Cal., for appellant.

Lillick, Geary, Wheat, Adams & Charles, Edwin L. Gerhardt, Alan H. Nichols, San Francisco, Cal., for appellee.

Before HEALY, FEE and HAMLEY, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This is an appeal from the judgment of the District Court denying recovery to Marshall, who, as a passenger upon a ship, sustained injuries as a result of jumping from a ladder onto a barge in disembarking from a ship lying in a harbor. Hon. Michael J. Roche, the able trial judge, who has had a long judicial experience, found that the injuries were proximately caused by and were the result of the negligence of Marshall, since he did not use the care of a reasonable and prudent person in disembarking. It was also found that the accident was not caused or contributed to by act or omission of the Master, officers, crew or employees or by any unseaworthiness of the ship. There were further findings that Marshall had failed to prove that a safe means of disembarking was not furnished, that reasonable means were not taken to safeguard Marshall, or that efficient officers and employees were not provided to superintend and supervise his disembarkation.

The question was one of fact, which has been resolved in the trial court.

There was evidence adequate to establish the facts which the court found. Marshall was a paid passenger aboard the M. S. Hardanger, which was owned and operated by Westfal-Larsen & Co., a common carrier for hire, and which was employed in foreign commerce. While the ship was anchored at Corral, Chile, the Master and Marshall left the vessel to go ashore. At the time of disembarking the gangway was so rigged to permit access to a barge from which they could board a tug. The weather was clear and dry, with a swell to the sea which moved the barge two or three feet up and down under the gangway, as Marshall knew. As Marshall descended the gangway, the Captain was behind him. Two seamen were on the barge scraping and painting the side of the vessel. Assistance was available to Marshall in reaching the barge, if he had wished it, but, when he arrived at the lower platform of the gangway, he decided to jump. At that time, the barge was about a foot and a half away from the side of the vessel and under the lower platform of the gangway. One seaman was engaged in pulling a rope to bring the barge under the gangplank and against the side of the vessel. The other seaman called "Don't jump" to Marshall, when the latter had reached the lower platform, but Marshall disre-

garded the warning and jumped from the platform as the barge was rising on the swell and before it reached crest. Marshall jumped at right angles to the vessel. When he landed on the barge, he tore the ligaments of his knee in preventing a fall into a hatch nearby.

Marshall testified that the Captain was close behind him and that he jumped because he had the impression from the silence of the Captain that the latter had commanded Marshall to jump. Marshall testified he saw no one on the barge and that he heard no warning. However, Marshall specifically admits that several hours after the accident he told the Master, and later the Chief Officer, that the accident was his fault. There is no reason for disturbing the findings in this situation.

The matters of law which are raised are easily decided. There are vestiges of the doctrine of trial de novo in admiralty, but these do not affect the attitude of this Court as to review of findings of fact, especially where the trial judge has seen and heard witnesses. This Court has accepted the rule that no greater scope of review will be exercised in admiralty as to findings of fact than is given in civil cases at law.[1]

Appellees were not insurers of the safety of Marshall. Undoubtedly, a vessel employed as a common carrier of passengers must exercise a high degree of care for their safety, and must maintain a reasonable, safe means for a passenger to disembark. Furthermore, employees must be provided to render such services as are reasonably necessary to get a passenger safely ashore. The trial court found that the ship had carried out these duties. If Marshall decided not to wait for assistance when he could see that there was a possible hazard, he assumed the responsibility. It was found also that he disregarded a warning shout of a crew member. His want of due care in these matters prevents his recovery.[2]

It is of small value to consider what other courts have done on different records. However, some opinions based upon analogous states of fact are collated in the footnote.[3] The trial judge was, on the record now before us, entirely sound in the findings and the determination of this cause.

Affirmed.

1. Benton v. United Towing Co., 9 Cir., 224 F.2d 558; McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20. See also United States v. Staples, 9 Cir., 256 F.2d 290, 293.

2. Erdman v. United States, 2 Cir., 143 F.2d 198; In re Keansburg Steamboat Co., 2 Cir., 249 F. 472.

3. Goode v. Oceanic Steam Nav. Co., 2 Cir., 251 F. 556; The Vulcania, D.C., 8 F.Supp. 300; The Empress of Scotland, D.C., 11 F.2d 783.