Glenn B. COUNTS

v.

**LAFAYETTE CREWBOATS,
INC., et al.**

Civ. A. No. 80–1869.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Nov. 8, 1983.

Chris Smith, III, Smith, Ford & Clark, Leesville, La., for plaintiff.

David R. Frohn, Camp, Carmouche, Barsh & Hunter, Lake Charles, La., for defendants Lafayette Crewboats.

Edmund E. Woodley, Woodley, Barnett, Cox, Williams & Fenet, Lake Charles, La., for Gen. Amer. Oil Co. of Texas.

Mouton, Roy, Carmouche, Bivins, Judice & Henke, Lafayette, La., for Continental Catering and Marine Office of Am. Corp. and Cont. Ins. Co.

V. Farley Sonnier Davidson, Meaux, Sonnier & McElligott, Lafayette, La., for Lafayette Crewboats.

**300**

## OPINION

VERON, District Judge.

Plaintiff Glenn B. Counts was injured on October 6, 1978, while attempting to move from General American Oil Company of Texas, Inc.'s (General American Oil) Platform # 4 to a small crewboat, the M/V BRETT. The accident occurred in the Gulf of Mexico off Cameron, Louisiana in West Cameron Block # 45. Plaintiff filed suit under the General Maritime Law on December 5, 1980 against various defendants including Lafayette Crewboats, Inc. and General American Oil. The Continental Insurance Company, as insurer of plaintiff's employer Continental Catering Service, Ltd., filed an intervention seeking reimbursement of Longshoreman and Harborworkers Compensation benefits already paid to the plaintiff, if plaintiff should recover in tort.

General American Oil filed a cross-claim against Lafayette Crewboats under its contract. It is conceded that General American Oil is covered by Lafayette Crewboats' insurance for any liability resulting from vessel negligence. Other parties were dismissed from the case under various motions. Trial was had as to these two defendants on July 7, 1983.

## FINDINGS OF FACT

On October 6, 1978 at about 10:30 A.M., Jerry Poole, a switcher; Randy Cotton, a roustabout; and the plaintiff, a cook were preparing to leave General American Oil's Platform # 4 since their tour of duty was completed. Using the crewboat M/V BRETT was the customary means of departure under normal conditions. The seas that day were "choppy" and the waves were running six to eight feet. However, no particular hazard existed.

A deck existed near the water level below and on the lee side of the platform. The M/V BRETT's customary practice was to back up to the platform, stern foremost. The crewboat would not push against the structure since this might have caused it to go under the deck and sustain damage.

Swing ropes were located at the edge of the platform. These were set up at different intervals, some further out than others for use depending on whether the person using them was leaving the platform or coming aboard. Additionally, two pipes were welded near one corner of the deck, referred to as "help me ups" as hand rails or bars for stepping on or off the deck. A personnel basket also existed on the platform but no one, including the plaintiff, felt it was necessary on this occasion (particularly since it offered its own hazards) to use it.

Harry Reineke, a naval architect and maritime engineer, testifying for the plaintiff stated that the swing rope method of transferral is widely used and was as reasonably safe as it could be. In fact, as one swings out if the crewboat is descending on a wave, the person can always swing back and make another attempt at boarding when the boat is on the rise of a wave.

Plaintiff testified that he intended to step from the platform's deck to the deck of the crewboat. According to his own testimony, plaintiff did not use a swing rope because he didn't consider the seas rough enough to justify it. As he made his step, the boat went down four to five feet (in concert with wave action) and he fell, striking his foot on a raised lip or covering around the edge of the deck. Rather than being an unsafe construction as plaintiff argued, the ledge prevents cargo from sliding off the crewboat's deck. No witnesses at trial verified any unsafe condition. All witnesses agreed that the lip was something to be aware of and to avoid landing on it.

At trial Mr. Counts admitted he stepped onto the M/V BRETT after it had commenced its downward plunge. Roustabout Randy Cotton testified that boarding a crewboat requires a judgment call. He stated that one steps to the deck as the vessel rises on a wave, not as the deck descends below the platform loading dock. Mr. Cotton voiced surprise at seeing Mr. Counts attempt to board the M/V BRETT first and stated that plaintiff just "bailed off" of the loading dock. He admitted to

not paying close attention to his attempted transfer to the crewboat, to not using the swing rope and to not having asked for the personnel basket or any other assistance. The crewboat's captain and plaintiff's two other co-workers boarded without mishap on the day in question. Captain LeBlanc testified that plaintiff boarded the crewboat too soon, before it was in position to receive passengers and thereby caused his own fall. And, more importantly, plaintiff had worked offshore for more than a year and had left the instant platform on at least 26 other occasions without mishap.

Plaintiff's counsel argued that Mr. Counts was not properly instructed in methods of platform egress. But, Henry Nortman (a General American Oil Safety Man) testified that General American Oil posted safety instructions on the bulletin boards both on shore and on the platform. Mr. Counts admitted to having read those bulletin boards. Plaintiff does not recall the exact printed instructions but does recall that boarding the boats was a subject at various company safety meetings.

## CONCLUSIONS OF LAW

■ A passenger may only recover personal injury damages if he proves the fault or negligence of the carrier. *See Moore-McCormack Lines, Inc. v. Russak*, 266 F.2d 573 (9th Cir.1959) and Norris, *The Law of Maritime Personal Injuries* (3rd Ed.) § 33. Included in the carrier's duty of care are its obligations to provide safe ingress and egress from the vessel, *Callahan v. Cheramie Boats, Inc.*, 383 F.Supp. 1217 (E.D.La.1974) and the duty to warn passengers of reasonably anticipated dangers—though not openly obvious ones, *The S.S. Serpa Pinto*, 45 F.Supp. 255 (E.D.N.Y. 1942). *See also Superior Oil Co. v. Trahan*, 322 F.2d 234 (5th Cir.1963) and *Massey v. Williams-McWilliams, Inc.*, 414 F.2d 675 (5th Cir.1969).

■ No case exists which clearly determines the fixed platform's owner's duty concerning safe ingress and egress from the platform. However, a *vessel* owner must provide a passenger a reasonably safe means of boarding a vessel, including the provision of proper gangways, landing places and personnel assistance. *See Tittle v. Aldacosta*, 544 F.2d 752 (5th Cir.1977) and *Arthur v. Flota Mercante Gran Centro Americana, S.A.*, 487 F.2d 561 (5th Cir.1974).

■ The passenger, in any event, must also exercise reasonable care and prudence. Since the vessel owner is not an absolute insurer of the passenger's safety, if the passenger is injured absent vessel owner negligence, no recovery is mandated. The passenger also cannot recover if the carrier's negligence was not foreseeable or the proximate cause of the injury. Norris, *The Law of Maritime Personal Injuries*, (3rd Ed.) § 33.

In a very analogous case, *Marshall v. Westfal-Larsen and Company*, 259 F.2d 575 (9th Cir.1958), the court affirmed a judgment for defendant where plaintiff was injured jumping from a ship to an adjacent barge. *Marshall* held that the passenger failed to wait for assistance in disembarking the ship and did not heed a crewman's warnings not to jump from the platform's gangway to the barge—just as it was rising on the swell and before it reached the crest.

■ After examining the facts of this case we now find no negligence by either General American Oil or Lafayette Crew Boats. Rather Mr. Counts' was injured through his own negligence in: (1) attempting to board the M/V BRETT before it was sufficiently close to the platform (2) not timing his step to coincide with the boat's movement up (3) not utilizing the swing rope so that he could swing back if the boat's movements were not conducive to boarding and/or (4) not requesting assistance if any was needed. These conclusions are particularly warranted when considering that General American Oil had instructed plaintiff in the applicable procedures. He had boarded crewboats many times in the past and the crewboat captain could have assisted him on the instant occasion if plaintiff had not boarded too soon.

For the foregoing reasons, we deny plaintiff's claim for personal injuries. Since plaintiff receives no recovery here, Continental Insurance Company's intervention concerning plaintiff's employer's compensation benefits must also be dismissed.

THUS DONE AND SIGNED at Lake Charles, Louisiana, this 8th day of November, 1983.