[No. A061613. First Dist., Div. One. June 24, 1994.*]

JAMES H. DeROCHE, Plaintiff and Appellant, v. COMMODORE CRUISE LINE, LTD., et al., Defendants and Respondents.

*Review granted September 15, 1994. Review dismissed and opinion ordered published April 20, 1995.

## Counsel

Richard C. Harper for Plaintiff and Appellant.

Andrew J. Olgivie, Vogl & Meredith and David R. Vogl for Defendants and Respondents.

## Opinion

STEIN, J.—James H. DeRoche, a San Francisco resident, filed a complaint against Commodore Cruise Line, Ltd. (Commodore) and International Marketing Systems, Inc. (IMS). He appeals from the judgment entered upon the order sustaining the demurrer of each defendant to the complaint without leave to amend, and from the order denying his subsequent motion for reconsideration. We will affirm.[1]

### Facts

We state the facts as they appear in DeRoche's second amended complaint, accepting them, and any facts arising by reasonable implication therefrom, as true. (*Schwartz* v. *Regents of University of California* (1990) 226 Cal.App.3d 149, 153 [276 Cal.Rptr. 470].) Commodore owns a number of cruise ships, including one known as the Caribe. IMS is a travel agent for Commodore. IMS issued DeRoche a ticket for a cruise on the Caribe, which cruise included a planned stop at Cozumel. DeRoche took the cruise, and disembarked at Cozumel where he rented a motor scooter which he used to explore the area. Late in the evening, DeRoche was injured when the motor scooter crashed after striking a pothole. Chief among his injuries was a

---

[1]Commodore requests that various matters contained in the appellant's appendix be stricken. These matters are a letter from the Honorable Gerry E. Studds, Chairman of the Committee on Merchant Marine and Fisheries; a letter to Chairman Studds from the United States Coast Guard discussing the medical care available on passenger vessels; a law review article; an excerpt from a treatise on maritime personal injuries; a copy of DeRoche's medical records; and a copy of a brochure issued by Commodore. Commodore complains that these matters were not before the superior court, are inadmissible hearsay and are not matters of which judicial notice may be taken. We grant the request as to the letters, advertisement and medical records. We deny it as to the law review article and treatise.

compound fracture of his right leg. DeRoche was given first aid at a small, local clinic, and then transferred to a larger clinic. In the meantime, one of DeRoche's companions contacted the crew of the Caribe, but the crew took no action. The following morning one of DeRoche's companions returned to the ship for the purpose of seeking the aid of the ship's doctor, Stanley Grabowski. Dr. Grabowski, apparently with reluctance, accompanied the companion to the Cozumel medical clinic. Once there he performed no independent examination but, upon being informed that DeRoche's injuries were life threatening, recommended that he undergo certain surgery proposed by the Cozumel clinic. Dr. Grabowski returned to the ship, and later that day the ship left Cozumel, leaving DeRoche behind. DeRoche underwent the surgery which, he alleges, was substandard. He remained in the Cozumel clinic for eight days, finally returning, with difficulty, to San Francisco on February 9. He has since undergone two surgical procedures, which he claims were made necessary by the substandard care in Cozumel. He further alleges that he will suffer the negative effects of that care for the rest of his life.

DeRoche filed suit against Commodore, and against its travel agent, IMS, on the theory that they had breached their duties to:

(a) respond to the information that DeRoche was injured and in need of medical assistance;

(b) maintain and provide adequate emergency medical facilities to treat foreseeable injuries, such as those suffered by DeRoche;

(c) provide medical facilities and treatment which DeRoche was entitled to expect and which they should have known would not be available on Cozumel;

(d) warn DeRoche of dangers and hazards, and of the lack of adequate medical facilities on the cruise; and

(e) otherwise exercise due care towards him.

## Discussion

The question on review from an order sustaining a demurrer without leave to amend is whether the complaint, liberally construed, can state a cause of action under any theory, or if there is a reasonable possibility the defect in the complaint can be cured by amendment. (*Heckendorn* v. *City of San Marino* (1986) 42 Cal.3d 481, 486 [229 Cal.Rptr. 324, 723 P.2d 64];

*Schwartz* v. *Regents of University of California, supra*, 226 Cal.App.3d at p. 153.) The question here, then, is whether DeRoche's complaint has, or might, state a cause of action against Commodore and/or IMS for breach of some duty of care.

■ The duty of care of the owner of an excursion ship is a matter of federal maritime law. (*Nash* v. *Fifth Amendment* (1991) 228 Cal.App.3d 1106, 1112, fn. 5 [279 Cal.Rptr. 465]; and see *Rainey* v. *Paquet Cruises, Inc.* (2d Cir. 1983) 709 F.2d 169, 172 and *Gibboney* v. *Wright* (5th Cir. 1975) 517 F.2d 1054, 1059.) That duty is to exercise reasonable care under the circumstances. (*Kermarec* v. *Compagnie Generale* (1959) 358 U.S. 625, 630 [3 L.Ed.2d 550, 554, 79 S.Ct. 406]; *Nash, supra*, at p. 1112.) The amount of care required naturally will vary with the circumstances; in some situations a high degree of care will be required, in others it may be something less. (*Rainey, supra*, at pp. 170-171.) The circumstances existent in the instant case were that DeRoche was not on the Caribe when he was injured, and was not injured by any instrumentality on, or of, that vessel. He was injured on land. He was riding a motor scooter which did not belong to Commodore. At the time he was injured he was not being guided by any Commodore employee or otherwise in the specific care of the ship operator. DeRoche nonetheless contends, in essence, that his relationship with Commodore obligated the ship operator to furnish him with medical treatment or to at least aid him in obtaining medical treatment at some place other than the "primitive" facilities on Cozumel. He argues that Dr. Grabowski acted negligently in refusing to treat or examine him and in failing to inform him that the Cozumel facilities were substandard; and that Commodore should be held vicariously liable for Dr. Grabowski's malpractice. He contends that Commodore's duty of care required it to warn him that the ship's doctor might not be able, or might simply refuse, to treat him for serious injuries and that he might be left in the care of local physicians. Finally, he theorizes that IMS, as a travel agent, had a similar duty to disclose the "hazard" of substandard medical care on Cozumel and to warn him that should he be injured, he would not be aided by the crew or physician of the Caribe.[2] Although we sympathize with what must have been DeRoche's feelings when he learned that he was to be left on Cozumel, more or less to fend for himself, we cannot find in the circumstances or the law any obligation by Commodore to do more.

It is settled that a shipowner ordinarily has no duty to insure the health or safety of its passengers. (*Kornberg* v. *Carnival Cruise Lines, Inc.* (11th Cir. 1984) 741 F.2d 1332, 1334; *Marshall* v. *Westfal-Larsen & Co.* (9th Cir.

---

[2]DeRoche, presumably, also seeks to hold IMS responsible for any negligence which might be imputed to Commodore.

1958) 259 F.2d 575, 577.) An operator is required to use reasonable care to furnish such aid and assistance as an ordinarily prudent person would render under similar circumstances. There is no obligation that a ship carry a doctor (*Barbetta* v. *S/S Bermuda Star* (5th Cir. 1988) 848 F.2d 1364, 1371); however, a ship operator owes a passenger, injured on board, the reasonable care an ordinary person would bestow upon the passenger under the circumstances. (*Barbetta, supra,* at p. 1371; *Northern Commercial Co.* v. *Nestor* (9th Cir. 1905) 138 Fed. 383, 387.) It has been held that, at least where there is no ship's physician, a ship operator is required, upon request, to obtain a shoreside doctor for an injured passenger upon reaching port. (*Boston & Yarmouth S. S. Co.* v. *Francis* (1st Cir. 1918) 249 Fed. 450, 452.) ■ We are unaware of any authority requiring a shipowner to ensure that a passenger, injured during a shore excursion, obtain better care than might be obtained locally, or indeed, obtain any care at all. To the contrary, it has been held that a shipowner incurs no liability because it declines to provide medical treatment to a passenger injured during a shore excursion, but leaves the passenger in the care of a local facility. (*Metzger, et al.* v. *Italian Line,* 1976 A.M.C. 453, 454-455 (S.D.N.Y.), affd. (2d Cir. 1975) 535 F.2d 1242.) DeRoche was not in Commodore's care when he was injured. We therefore conclude that, absent some special circumstance, Commodore breached no duty owed to DeRoche by failing to obtain medical treatment for him, or by failing to aid him to obtain better care than that afforded him at the Cozumel facility.

In addition, it has been held that a passenger may not seek compensation from a ship operator for the negligent treatment or advice of the ship's physician; the only negligence which may be imputed to the operator is negligence in the selection of the physician. (*Barbetta* v. *S/S Bermuda Star, supra,* 848 F.2d at p. 1369, and see cases cited there.) It is true, as DeRoche points out, that a contrary conclusion was reached by the court in *Nietes* v. *American President Lines, Ltd.* (N.D.Cal. 1959) 188 F.Supp. 219, (*passim*), holding that principles of *respondeat superior* nonetheless justify imposing liability on the ship operator for a physician's negligence. The holding, in part, was based on the "opinion" that a ship's physician is under the general direction and supervision of the company's chief surgeon through modern means of communication, and that it is no more difficult to control or supervise a physician than it is to control or supervise "the highly skilled operations involved in the navigation of a modern ocean carrier by its master." The court reasoned that it made no logical sense to attach liability to the employer for the negligence of the master but not for the negligence of the physician. (*Id.* at p. 220.) *Nietes,* however, appears to stand alone in this holding and has been criticized roundly for it. (See *Barbetta, supra,* at pp. 1370-1371, and cases discussed there.) The weight of the authority, accordingly, mandates against a finding that any negligence which might be

imputed to Dr. Grabowski (and we intend no implication that Dr. Grabowski was negligent, or that he had a duty even to see or examine DeRoche for an off-ship injury), might be imputed to Commodore. We see no reason to depart from the established law.

■ As to the duty to warn, it is generally accepted that where a carrier, such as Commodore, has a continuing obligation for the care of its passengers, "its duty is to warn of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit." (*Carlise* v. *Ulysses Line Ltd., S.A.* (Fla. 1985) 475 So.2d 248, 251; and see *Tradewind Transportation Company* v. *Taylor* (9th Cir. 1959) 267 F.2d 185, 187-188, 190.) DeRoche contends that the allegedly substandard medical care available in Cozumel, and the fact that Commodore would take no steps to aid him in obtaining better care, were dangers reasonably known to Commodore, of which he should have been warned. There is authority supporting this position, but only when there are facts from which it might be concluded that the carrier has some knowledge of an unreasonable risk. In *Carlisle* v. *Ulysses Line Ltd., supra*, it was held that a cruise line, having a continuing obligation of care for its passengers (as opposed to providing nothing more than point-to-point transportation), might be liable for failing to warn its passengers of the danger of criminal activity on a secluded beach. The passengers had rented a jeep and, following the advice of an activities director, had visited the beach by means of an isolated access road, where they were ambushed by armed robbers. In *Tradewind Transportation Company* v. *Taylor, supra*, it was found that liability might be predicated on a failure to warn that steps leading up to a temple might be slippery. The transportation company in that case provided transportation to the temple, but did not guide, or otherwise accompany, the plaintiff from the ground transportation into the temple. The plaintiff allegedly was injured when she slipped on steps which had become wet in the rain. The circuit court reversed judgment in favor of the plaintiff, however, on the grounds that insufficient evidence had been produced that the transportation company had any knowledge of an unreasonable risk of harm to the plaintiff or of a dangerous condition. (267 F.2d at p. 190.) The court in *Metzger et al.* v. *Italian Line, supra*, held that the cruise ship could not be found liable for failing to warn its passengers that they might be injured by the negligence of a local taxi driver. The court found that although the cruise line might have a duty to warn of known dangers, there were no facts from which it could be concluded that the cruise line had an awareness of the risk at issue and therefore no facts supporting a duty to warn. (1976 A.M.C., *supra*, at p. 454.) Finally, in *Gillmore* v. *Caribbean Cruise Line, Ltd.* (D.P.R. 1992) 789 F.Supp. 488, 491, the court recognized that the relationship of a cruise line to a passenger might be such that the cruise line owed a duty to the

passenger to warn that a particular pier was unsafe as being in a high crime area, where the shipowner had actual or constructive notice of that dangerous condition. Under these authorities, as Commodore agrees, a ship operator may indeed have a duty to warn of known, unreasonable risks or dangers. DeRoche, however, alleged no facts from which it might be concluded that Commodore had knowledge of any unreasonable risk posed by the state of Cozumel's medical care facilities. Indeed, there is nothing from which it might be believed that Commodore was in any position to judge the quality of medical care available in Cozumel or anywhere else. It follows that no facts were alleged supporting a duty to warn.

In addition, it is settled that there is no duty to warn of a danger that is as obvious to the injured party as to the defendant. In *Marshall* v. *United Airlines* (1973) 35 Cal.App.3d 84 [110 Cal.Rptr. 416], the plaintiff was injured when her shoe caught the metal tread edging of a stairway in an airport building. She brought suit against her carrier, United, in part on the theory that it had a duty to warn her of the dangerous condition of the stairway. It was held that no duty to warn could be imposed when the defect was equally observable to the plaintiff and to United. (*Marshall, supra,* at p. 90.) It follows that Commodore had no duty to warn of the obvious: that the standard of medical care available in Cozumel might be less than that available in the United States.

We further see no duty to warn that ship medical facilities would not be available to passengers injured off-ship. Despite DeRoche's unsupported conclusions that Commodore somehow had promised to take care of its passengers at all times during their vacations, we see nothing in the record to indicate anything other than that Commodore was offering luxury transportation to various ports of call, promising to pamper its passengers while they were on board. In other words, we see nothing from which DeRoche reasonably could have concluded that Commodore had promised to afford him medical care for off-ship injuries. Again, there was no reason for Commodore to warn DeRoche that such care would not be provided.

■ IMS, as Commodore's travel agent, has no liability for the torts, if any, of its principal and, absent fault on its own part, cannot be vicariously liable for the wrongful acts of its principal. (*Rookard* v. *Mexicoach* (9th Cir. 1982) 680 F.2d 1257, 1261.) Any theory DeRoche may have that IMS owed him its own duty to warn suffers from the same flaws as DeRoche's theory that Commodore owed him a duty to warn.

■ DeRoche contends that the demurrer should not have been granted because his complaint stated a cause of action for breach of contract.

DeRoche alleged an oral contract evidenced by written documents and oral representations. He alleged that Commodore agreed to transport him safely throughout his entire cruise. He further alleged that the defendants' "advertising and representations state that Defendants will provide emergency medical assistance to passengers on its cruises." Again, we see no breach of those promises here. DeRoche was injured while on the island of Cozumel and while he was not under the care of Commodore. We see nothing in the allegations, and nothing in the advertising, from which it might be concluded that Commodore represented that it would provide medical care for injuries occurring on shore. It follows that DeRoche's complaint did not set forth facts supporting liability on the grounds of breach of some contractual duty.

Finally, we do not see that DeRoche has met his burden of showing that he might be able to amend his complaint to state a cause of action. ██ A plaintiff has the burden of showing that the trial court abused its discretion by sustaining a demurrer without leave to amend. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].) Although invited to do so by the superior court, DeRoche was unable to show that he could allege additional facts supporting his legal theories. On appeal he argues only that the facts he *did* allege support a breach of four duties: (1) the duty to furnish reasonable aid and assistance to passengers who are injured ashore; (2) the duty to warn passengers of nonobvious dangers which they might reasonably anticipate, which were known by respondents due to their professional expertise and experience; (3) the duty to exercise reasonable care in their medical treatment of DeRoche; and (4) the duty to use reasonable care in the hiring of the ship's doctor. We have concluded that the facts alleged by DeRoche did not state a cause of action on any of these grounds. Having so concluded, we can find no abuse of discretion in the trial court's determination to sustain the demurrer without leave to amend.

The judgment is affirmed.

Strankman, P. J., and Dossee, J., concurred.